## VEEDER & CLUTE *vs.* FONDA and others.

Where land sold under a decree of the court was described in the master's notice as containing about twenty acres, when in fact it contained but thirteen acres, and one of the complainants who was present at the sale knew of the deficiency, but concealed that fact from the master and the bidders, and encouraged them to bid, the sale was set aside on the application of the purchaser.

The master who sells property should insert nothing in his description of the same in the notice of sale which may unduly enhance the value of the property or mislead the purchaser.

It is the policy of the court of chancery to encourage a fair competition at a master's sale; and to effect this object, it will not allow any deception whatever to be practiced upon bidders.

A person who sells land, as containing a certain quantity, more or less, when he knows from an inspection of the title deeds in his possession, or otherwise, that it contains a much less quantity, in equity is bound to make good the difference.

But where a contract has been consummated without any fraud, misrepresentation or concealment as to the real quantity of land sold, courts will not inquire whether there has been an actual mistake as to the supposed quantity.

If there has been either fraud or concealment, or any thing beyond a mere mistake on both sides as to the quantity of land, the contract will not be enforced against the party who is deceived.

February 21. THIS was an application to compel the purchaser, under the decree in this cause, to complete his purchase. The purchaser resisted the application, on the ground that he had been deceived by the notice of sale as to the quantity of land contained in the lot sold.

*A. C. Paige,* for the complainants. It has been repeatedly decided that masters' sales do not come within the statute of frauds. The objection therefore that the purchaser is not bound to complete his purchase, upon the ground that there was no memorandum in writing of the sale, cannot be sustained. The purchaser in this case is bound to complete the sale. The title is perfect, both at law and in equity. Where the vendor shows a prima facie title, against which there are no reasonable grounds of suspicion, a purchaser at a master's sale is bound to complete the purchase. (*In the matter of Brown-*

*ing*, 2 *Paige's Ch. R.* 64. *Morris* v. *Mowatt*, 2 *id.* 586.) The biddings at a master's sale will not be opened, except in very special cases. (*Duncan* v. *Dodd*, 2 *Paige's Ch. R.* 99.) The only objection urged against this motion is, that the purchaser was deceived as to the quantity of land in the lot sold. The advertisement describes it as "containing about 20 acres, be he same more or less." We contend that this description was of a character calculated to put the bidders upon inquiry as to the actual quantity. The lot in question is situated very near the residence of the purchaser. If he was ignorant of the actual quantity of land the lot contained, his ignorance is the result of his own neglect. Where land is sold by such a description, it is distinctly understood that the vendor covenants nothing as to the actual quantity, and that the purchaser takes the land, whether it be more or less, running all the hazard as to the quantity. This is the universal understanding between vendors and purchasers. Whenever land is purchased by such a description, the purchaser is presumed to relinquish all claim to a warranty from the vendor as to the actual quantity. The purchaser here, therefore, cannot now object to completing his purchase, upon the ground that he was deceived as to the actual quantity of the lot sold by the master.

*J. Rhoades*, for the purchaser. There is nothing in the petition or report to take the case out of the statute of frauds. (2 *R. S.* 135, § 8.) There is no pretence of any memorandum in writing of the sale or of the purchase having been made at the time or signed either by the master or purchaser, or of any part of the purchase money having been paid. Even in England the case of a master's sale is not taken out of the statute until after confirmation of the report of sale; (*Sugden's Law of Vendors*, 41 ; *Hoffman's Pr.* 216 ;) and there the bids are always entered in writing by the bidder in the master's book. (2 *Fowler's Exch. Pr.* 307. 2 *John. Ch. Cas.* 154.) Our statute above referred to is general, and must overreach any previous practice, if any existed, contrary to its requisitions. The case in 1 *Ves. sen.* 221, also recognizes this doctrine, to wit, that it is not out of the statute until after confirmation

of the master's report. (*Hoff. Pr.* 217.) The motion is also premature. Proceedings (on a report not confirmed) against a purchaser cannot be sustained. (*Hoff. Pr.* 216, 17. 1 *Vesey, sen.* 221. *Belt's Supplement,* 115.) But I waive all preliminary objections. As to the policy of masters' sales, see *Hoffman's Pr.* 212. As to masters' duty in such a case as this, see *Hoff. Pr.* 215, also 2 *R. S.* 369, § 35, taken in connection with rule 139. Can it for a moment be pretended that it is an appropriate description of two parcels of land, one containing seven acres and nine perches, and the other five acres and three fourths, to call them the former homestead, &c. containing in the several lots about twenty acres, be the same more or less. By such a description, the grantor covenants to convey about 20 acres, and also covenants that we shall have all within the description, " be it more or less." It is the duty of buyers and sellers to disclose to each other all facts that would materially affect the price. (*Livingston* v. *Peru Iron Company,* 2 *Paige's Rep.* 390.) Here was a technical fraud, to say the least, on the part of Clute, one of the complainants. There was a combination to run up the property to a high price, and then to let it be struck off to A. Craig ; with the intention of taking him in. The well settled rule in chancery in relation to incumbrances is, that the purchaser will not be bound to pay the money until the incumbrances are removed. (*Sergeant Maynard's Case, Freeman's Rep. in Chan.* 2. *Idem,* 106.) The principle of the rule is, that if the owner conceals the fact of incumbrances from the purchaser, he commits a technical fraud upon him. And will it be pretended that it will not equally apply in a case of misrepresentation as to the quantity of the land ? (*Hoff.* 229. *Lord Thurlow's Rule.*) Suppose this had been sold by the same description, but by the acre, at one hundred dollars an acre ; could we have been compelled to pay for 20 acres ? Certainly not. Suppose also incumbrances on 20 acres to the value of seven acres.

The effect upon masters' sales of granting this motion would be to prevent all from bidding who had not first surveyed the land and investigated the title. It is the policy of the court to encourage all persons to bid at masters' sales. An immense

amount of property would be annually sacrificed, if the complainant's doctrine was once established. At law, the words "containing so many acres, be the same more or less," are merely words of description. (*Mann* v. *Pearson,* 2 *John. R.* 37.) In sheriffs' deeds, the land must be defined. (13 *John.* 97, 537.) We are entitled to costs. The complainants ask them against us ; and they make here a premature and improper motion. In case of a defect of title, the purchaser is entitled to costs. (*Hoff. Pr.* 232, 3. *Hampson* v. *Brandwood,* 1 *Madd. Rep.* 211, 215.) But if the court should be against us on the motion, we ask for time to investigate the title, and to raise objections thereto, if any exist. There may be objections to the title or to the regularity of the proceedings, or a want of parties. Judgments subsequent to the trust deed may exist. The plaintiffs in those judgments would certainly have equitable liens on all the property, after satisfying previous incumbrances. This court will not compel a party to take a title without investigation, nor an uncertain title, although its own opinion may be in its favor. (*Abel* v. *Heathcote,* 2 *Ves. jun.* 100. *Stapleton* v. *Scott,* 16 *Ves.* 272. *Morris* v. *Mowatt,* 2 *Paige,* 586.)

THE CHANCELLOR. As property to a vast extent is sold under the decrees and orders of this court, much of which property belongs to infants, and others who are not able to protect their own rights, it has always been an important object with the court to encourage a fair competition at masters' sales. For this purpose it is necessary that purchasers at such sales should understand that no deception whatever will be permitted to be practiced upon them. That in a contract between them and the court, they will not be compelled to carry that contract into effect under circumstances where it would not be perfectly just and conscientious in an individual to insist upon the performance of the contract against the purchaser, if the sale had been made by such individual or his agent. It is, therefore, a principle of the court that the master who sells the property shall not, in the description of the same, add any particular which may unduly enhance the value of the property, or mislead the pur-

chaser. (2 *Atkinson on Conv.* 71.) In this case the description, by which the property was advertised and sold, was false or mistaken in two particulars, although it corresponded with the description in the deed of trust and in the complainants' bill. The first particular, which described it as "the former homestead of Jellis Fonda," would not be very likely to mislead, because the north line of the canal was described as the boundary. This was such a notorious designation of the extent of the lot in that direction, that a bidder could hardly be under the mistake of supposing it included that part of the homestead which extended south of the canal. The land actually sold, however, was described as "containing about 20 acres, be the same more or less." This was, probably, about the quantity contained in the original homestead. But the land actually sold has, upon measurement, been found to contain less than 13 acres. There is nothing in the particular situation of the land to induce a belief that the number of acres contained in the tract would not necessarily form a very important circumstance in the estimate of the value of the property. And the purchaser swears he had no knowledge of the quantity, except from what was contained in the notice of sale, and that he bid with reference to the supposed quantity as there described. Had it been a mill site, or other property of that description, in which the particular spot, and not the supposed quantity of the land formed the principal ground of value, the case would have been materially altered.

There appears to have been a considerable difference of opinion among judges in the different states upon the question whether a court of equity ought to relieve against a mistake as to the quantity of land, where it was afterwards found to be much less or much greater than the quantity mentioned in the deed or contract between the parties. (*See* 1 *Peters' C. C. R.* 58; 4 *Bibb's R.* 215, and 1 *Ves. & Beam.* 375, note 1, *where most of the American cases are collected.*) It seems now, however, to be generally understood that where the contract has been consummated, without any fraud, misrepresentation, or concealment as to the real quantity, the courts will not inquire whether there has been an actual mistake as to the supposed quantity contained within certain specified boundaries. But this result has been produced more from the necessity of qui-

1832.

Veeder
v.
Fonda.

eting interminable litigation, than from the real equity of the principle established by the decisions. And wherever there has been either fraud or concealment, or any thing beyond a mere mistake, on both sides, as to the quantity, a court of equity ought not to enforce the contract against the party who has been deceived.

In this case the master undoubtedly supposed the description in the deed to the trustees, describing the several lots, together, as containing about 20 acres, to be correct, or nearly so, as to quantity. But it appears from the affidavits produced that one of the complainants, who was a trustee for the persons interested in the fund to be raised, was present at the sale and suffered the property to be put up as containing about 20 acres, although he was then aware of the fact that it contained but 13 acres, or about that quantity. He also interfered actively at the sale, by urging the purchaser and others to bid, and without disclosing the fact that the real quantity of land was less than two thirds of what was represented as being the probable contents of the premises. He had also previously informed another party to the suit, who was interested in the fund to be raised under the decree, that the land fell short of the quantity described in the notice. As the statement of the supposed contents of the lots was calculated to deceive the bidders, as to the real value of the property, it was the duty of these parties to the sale to disclose the fact to the master and to the bidders, so that the competition might be fair and equal, and that they might not be misled. I cannot sanction the suppression of such a material fact by the trustee who represented the parties interested in the sale ; and the purchaser having been actually deceived as to the quantity, he must be discharged from the purchase. A man who sells land as containing a certain quantity, more or less, when he knows, from an inspection of the title deeds in his possession, or otherwise, that it contains a much less quantity, in equity is bound to make good the difference to the purchaser. (*Nelson* v. *Matthews,* 2 *Hen. & Mumf.* 164. *Duvals* v. *Ross,* 2 *Mumf. R.* 290. *Pringle* v. *Samuel,* 1 *Litt. R.* 44.)

Under the circumstances of this case, as Clute was endeavoring to make the property produce the highest price for the

benefit of his cestui que trusts, I do not feel·disposed to charge the costs of this application on him personally. The petition must however be dismissed, with costs, to be paid out of the fund raised by the sale under the decree ; and this particular piece of property must be re-sold. Such re-sale, however, may be made upon a notice of two weeks.