The Chancellor.
This is an application, by petition, on behalf of Sarah Ann Gardner, to open a sale made by a sheriff under a decree of this court.
The complainant filed his hill to, foreclose the defend *424 ant of her equity of redemption in the premises in dispute, and to satisfy a mortgage of five hundred dollars, and some interest due thereon, by a sale of the premises. The defendant, in January, 1856, had purchased the premises, subject to two mortgages. The first mortgage is for $500, dated January 16th, 1845, and is the mortgage held by the complainant, upon which he filed his bill. The second mortgage is dated June 20th, 1845, and was originally for $250, but has been reduced by a payment of $100 of the principal. The second mortgagee was not made a party to the suit. Thei’e are no parties except the first mortgagee, and Sarah Ann Gardner who holds the equity of redemption. She puz'chased the property subject to the mortgages, and assumed their payment as part of the purchase money. The property was sold by the sheriff, for the sum of $500. The complainant was the puz’chasei’, and the sheriff' delivei’ed him a deed for the property.
It is insisted, as a preliminary objection to this applicatiorz, that the sheriff having delivered the deed, the matter is beyond the control of the court, and that the ground of complaint is such as is propez-ly the foundation for relief by bill, and not a matter which is addz’essed to the mez’e discretion of the court.
The practice pursued by this court in opening bid-dings, or setting aside sales under a decz’ee, has assimilated very much to the English practice after a report of sale, and confirmation of the same. According to the practice in the Court of Chancei’y in England, if parties apply to open biddings before the report is confirmed, it is a matter of course to open them on payment of costs and making a deposit; but after confirmation, a special ground upon evidence is required. This court has never interfered with a sale for mere inadequacy of price, but has uniformly declined doing so. It has always required some special ground to be laid, such as fraud or accident, which has prevented a fair sale of the property, and *425 worked injustice to some party whose interest is affected by the sale. The special ground which, by the English practice, is required to open a sale after confirmation, has always been required by this court to open a sale when the property has been struck off to the purchaser. In England, a sale confirmed is upon the same looting .as a sale here which has been confirmed, (not by the court, for that is not required,) but by the sheriff’s completing all that is necessary to be done, a sale upon his execution, and delivery of his deed to the purchaser. The same objection, therefore, which would exist to the opening of a sale, by this court, upon motion or petition, after the sheriff’ had delivered his deed, would operate with equal force against that practice after a confirmation of sale, if such confirmation were necessary.
In the case of Watson v. Birch, (2 Ves. jr., 51,) the sale had been confirmed. The confirmation was on the 24th of July, 1792. On the 28th of November following, a motion was made, by a party interested, to open the bid-dings, which was successful. Lord Commissioner Ashurst said, in that case, that upon the best consideration, he could not find any more confined rule than this, that as a general principle, biddings are not to be opened after confirmation of the report, unless under particular circumstances ; that iu Gower’s case it was decided thus far, that increase of price alone is not sufficient; but if fraud appears, that suspends the operation of the general rule; that fraud was only mentioned as one exception; but it was not laid down as the only possible exception; that the same general rule was laid down in Prideaux v. Prideaux, 1 Bro. C. C. 287.
The case of Morice v. Bishop of Durham (11 Ves. 57) is one where a motion was made to open the biddings after the confirmation of the report of sale. So, also, the case of White v. Wilson, 14 Ves. 151. In both cases the motion was denied, Lord Eldon deciding that he would not *426 open biddings after confirmation, unless for fraud in tbe purchaser, or fraudulent negligence, in another person, as the agent, of which it would be against conscience that the purchaser should take advantage. But in these cases, .although the sale had been completed, as much so as the sale^in the case we are considering, where the sheriff had delivered the deed, the application was not objected to on the ground that it was by motion, and not by bill. ■ The motion would have been successful, in both cases, if the party making it had laid before the court sufficient ground to justify its interference.' The objection was not taken, that the sale having been confirmed, any interference with it was beyond the reach of the court, by motion or petition. All the court did was to put different limits to the discretion to be exercised in the case where a confirmation had taken place, and in a case where it had not.
In the case of Collier v. Whipple (13 Wendell 224), the deed had been delivered by the master to the purchaser. An application, by petition, was made for a resale, on the ground, that through some misapprehension in a conversation with the master and an agent of the petitioner, the latter did not attend the sale. The Chancellor ordered a resale, which order, on appeal to the Court of Errors, was affirmed. Mr. Justice Nelson, in delivering the.opinion of the court, expressly declares, that he considers the fact of the delivery of the deed of no importance. “ As to the deed, it was taken subject to the jurisdiction of the Chancellor over the sale.” In Requa v. Rea and wife (2 Paige 339), the deed had been delivered, and the application for resale was by petition, which was successful. The Chancellor remarked, in that case, “ Where a person becomes a purchaser under a decree, he submits himself to the jurisdiction of the court in that suit, as to all matters connected with that sale or relating to him, the character of purchaser,” and cites Cassamajore v. Strode, 1 Sim. & Ster. Rep. 381.
The case of Tripp v. Cook (26 Wend. 143) is a very strong *427 case directly to the point. The mortgagee had purchased in the property at an inadequate price. The master delivered the deed, and the sale was confirmed by the court. The mortgagor presented his petition, stating that, within a week after the service of the subpoena upon him, he had an interview with the complainant, and understood, from the conversation then had, that the suit would be no further prosecuted, and in consequence thereof did not attend the sale. The petition was granted, and the court laid down the principle, that a resale would be ordered where the mortgaged premises had been sold greatly below their value, and bought in by the mortgagee, if the mortgagor, or those standing in his place, had been misled by the mortgagee, or even by a third person, in reference to the foreclosure of the mortgage, and in consequence thereof, did not attend the sale.
In looking through all the cases, I do not find anything to sanction the position taken by the complainant’s counsel, that because a deed has been delivered, the court cannot remedy any wrong that has been committed, on an application by petition of the party aggrieved. There was but one difficulty suggested, which was this. It was said that the title having passed to the purchaser, and become a matter of record, an order for resale would leave the deed to the purchaser upon record; that it would not divest him of his title, thus acquired, and that the deed would thus remain upon the record an embarrassment to the title. There certainly can be nothing in the objection. If the court has control of the matter, it may make such order as will remove any such difficulty as the one suggested. The mortgagee is the purchaser, and receives the satisfaction of his mortgage by the decree of this court. He must submit to such terms as equity shall impose, and as is agreeable to good conscience. If a resale should be ordered, the court may require the mortgagee to release to the purchaser all the title he may have acquired by the sheriff’s deed, so that the title may stand *428 upon the record wholly disembarrassed. I think there is no difficulty in the court’s ordering a resale, if justice demand it.
The ground, upon which a resale is asked, is mistake, by which the defendant has been deprived of her property. She alleges that no process to appear was ever served upon her, and that she was wholly ignorant of the proceedings in the suit, and of the fact, that the property was to he sold, until after the sale had taken place. There can be no doubt but that the subpoena was served, and that the defendant had all the notice that is required by law. A service at her dwelling house, with a member of the family, is all that the statute requires, (Nixon 89, § 9,) and it is not disputed that such service was made. But the defendant alleges that, although the subpoena was left with her brother, she was misled by him as to its contents; that he informed her that it was a notice merely, from Mr. Campbell, that he wanted his money, and that, relying upon this information, her attention was never called to the suit. There is great conflict of testimony, and it cannot be reconciled, as to the particulars of the service of the subpoena. I feel bound to take the statement made by the sheriff as true : and yet, taking it as true, I cannot think that the defendant understood it as a notice to appear to a suit in court. She alleges, in her petition, and proves, that, after this, she actually furnished the money to pay the interest, and made arrangements to raise the money to pay off the mortgage. Her conduct is so entirely irreeoncileable with the fact, that she understood the contents of the subpoena, that it is impossible to escape the conclusion, that she was ignorant of its purport and object, except upon the assumption that she contrived a plan for an opportunity like this to avoid any proceedings that might be had against her. This supposition is not to be reconciled with her sanity ; for she offers to pay off the mortgage, with all the expense that has been incurred, and has gained nothing, *429 and could gain nothing, by simulating ignorance, which has involved her in the present difficulty.
I think, after carefully examining the evidence, I may state the case to be this: The subpoena was served according to the statute; but although the defendant had legal notice, through some mishap, she was prevented having actual notice of the contents of the process. In this way, her property has been sacrificed. It was worth $3500. It was sold for §500. The case is not a strong one, but there are some considerations, to which I have not alluded, which incline me to regard the case with indulgence. The defendant is a woman advanced in life. She was the sole defendant in the suit, and, as the evidence shows, had no one upon whom she could rely for aid and advice with any confidence. This is a matter deserving some consideration, for it may be said, that it was culpable negligence in her not to attend to the notice that was served upon her, and that, while the court may properly aid a party who has been innocently misled, it will extend no indulgence to one to whom culpable negligence can be attributed. This'is certainly correct, and it is therefore proper to look at the character and situation of the party, in order to ascertain what degree of negligence is properly to be imputed. Duncan v. Dodd, 3 Paige 99. In connection with this, I may say, there ought to have been another party to this suit. Why the person holding the second mortgage was not made a party, does not appear. The second mortgagee was a necessary party to the suit. Had he been a party, the difficulty in which the defendant has been placed would not have been so likely to occur.
There is another consideration. The purchaser is the mortgagee, and not a stranger. I think, where the mortgagee is the purchaser, and the party applying to open the sale offers to pay all the money due upon the security, and there has been really a mistake upon the part of the owner of the equity of redemption, owing to which the *430 property has been sacrificed, the court ought to regard an application for resale with more indulgence than when a stranger is the purchaser. Mr. Justice Nelson, in Collier v. Whipple (13 Wend. 228), in noticing this circumstance, remarks: “ all the plaintiff' is entitled to is his debt; that end is not defeated by opening the bid, but generally attained; and the control which he has, right or wrong, over the proceedings, down to the sale inclusive, should induce courts closely to scrutinize his connection -with it;” and in Tripp v. Cook (26 Wend. 156), the senator who delivered the opinion of the Court of Errors says — “ The mortgagor, and those who stand in his place and share in his losses, have a right to be protected, so far as is consistent with the mortgagee’s rights, against needless sacrifice of their property, whilst the mortgagee can claim nothing beyond the amount of his loan. Hence, as between these parties only, if from any cause whatever the mortgaged property should be sold very far below its market value, to the injury of the owner or of others interested in it under him, as his sureties or otherwise, it would always be a claim of strict justice to allow the opportunity of a second sale, upon such terms as will secure the mortgagee’s debt.” And again, on page 158 of the same case — “ Where the buyer is the holder of the mortgage, he must surely be content if his debt is paid. He has commonly an entire control over the proceedings and sale, and has no right to use it for any purpose of advantage beyond securing himself. Eor does the holder stand upon the same footing of public policy with other buyers. He seldom purchases for investment or use. He bids to secure himself, and when he buys in, he takes the property in payment of so much debt.”
The defendant does not ask that the sale may be opened, and the complainant be subjected to any risk or delay in realizing the money due upon the security. Eut as soon as she heard that her property had been sold, and that the complainant was the purchaser, she offered to redeem the *431 property, which the complainant refused. She now offers to pay him all the money duo upon the decree and the costs. It is all that the complainant is entitled to, and I think it is a case where it is right that the court should interfere.
Let an order be made that the sale be opened, on the following conditions: that within twenty days after tí e date of the order, the defendant pay to the complainant the amount of the decree and interest, together with all expenses of the sale by the sheriff, and all other incidental expenses incurred and paid by the complainant in and about the said sale, in procuring his deed, recording, &e., and upon such payment, let the complainant execute to the defendant a quit-claim deed for the mortgaged premises, and also an assignment of the decree, all of which is to be done at the defendant’s expense. Upon failure of the defendant to comply with the terms of the order, let it be discharged, and the sale stand.