SEARCY & SCHUSTER *v.* McCHORD, Assignee, etc.

*(District Court, D. Kentucky. March 4, 1880.)*

SALE—MISTAKE—ASSIGNEE IN BANKRUPTCY.—A court of equity will set aside a sale by an assignee in bankruptcy where the purchaser has been innocently misled by the advertised notice of the sale.

In equity. Bill and cross-bill for specific performance. The bankrupt, Hardesty, was the owner of 180¼ acres of land in Washington county. Under an execution issued on a replevin bond the whole tract was, prior to the commencement of bankruptcy proceedings, sold for less than two-thirds of its appraised value to a man by the name of Hardin. Before the expiration of the year which Hardesty had for redemption he became a bankrupt, and defendant, McChord, was chosen assignee. McChord thereupon advertised, by printed handbills, that on a certain day he would sell at public auction "the right of redemption of said Hardesty in 180¼ acres of land, upon which said Hardesty now lives, situated in Washington county, etc. Said farm is in a high state of cultivation, and there is a good frame house and all necessary outbuildings thereon. Terms of sale: The right of redemption in the land, and the store-house, will be sold on a credit of three months, with interest from date, etc."

At the time and place mentioned in the advertisement he put the property up at public auction, and struck it off to the complainants at $1,270. Complainants thereupon gave the assignee a note for this amount, and paid to Hardin, the purchaser at the execution sale, the amount paid by him at such sale, and 10 per cent. interest, amounting to $880. At the maturity of their sale bond the assignee insisted that the complainants were bound to take the property at $1,270, subject not only to the lien of Hardin, the purchaser at the execution sale, but also to the homestead right claimed by the bankrupt and his wife, and that they had no right to have this homestead right satisfied out of the proceeds of the sale.

The prayer of the bill is either for a specific performance— that is, a conveyance from the assignee free from the homestead, in case Hardesty and wife could be induced to make a

quitclaim deed of their homestead right; and, if not, for a rescission of the sale, a cancellation of the complainants' note, and a subrogation to Hardin's lien for $880.

The bankrupt and his wife filed an answer claiming a homestead right in the property, and tendering a quitclaim deed to the assignee, conveying such homestead right and incohate right of dower of the wife of the bankrupt, to be delivered on payment by the purchaser of $1,000.

The assignee, McChord, filed a general demurrer to the bill, and a cross-bill, in which he alleged, in substance, the same facts averred in the original bill, and that the sale was made in accordance with the advertisement, but construed the advertisement to mean that the assignee did not sell the land free from the homestead right, and tendered a deed conveying to the complainants the right of redemption of the bankrupt in the tract of land in question, and prayed for a decree directing the complainants to pay to him the whole note, and that he be relieved from all claims of dower and homestead in the premises.

To this cross-bill complainants demur.

*O. A. Wehle*, for complainants.

*W. O. & J. L. Dodd*, for assignee.

BROWN, J. The question presented by the pleadings is whether the complainants are entitled to a decree for specific performance upon their view of the case, or whether the defendant is entitled to the purchase money agreed to be paid at the sale, regardless of the homestead right claimed by the bankrupt. It is a well settled principle of law that in judicial sales there is no warranty, and the rule *caveat emptor* is applied with full force. This was settled by the supreme court of the United States in the case of *Monte Allegre*, 9 Wheat. 616, and is the general doctrine in most, if not all, the states. Rorer on Judicial Sales, §§ 458 and 459. I see no reason why this rule does not apply to sales made by an assignee in bankruptcy. In such case the assignee making the sale is the mere agent of the court, having no power to bind any one but himself. This he may undoubtedly do in

case of fraud, or upon a conveyance with a warranty, and in such cases only. *Mockbee* v. *Gardner*, 2 Harris & Gill, 176.

I should find great difficulty in this case in holding that the assignee had bound himself personally by anything contained in this advertisement. He purports by this to sell "the right of redemption" of the bankrupt in the land in question, but he does not assume to guarantee that the property is not subject to other liens. While it may be true that, if the bankrupt himself had put forth this advertisement and sold the land, he would be estopped to set up a claim of homestead, the assignee stands in a somewhat different relation to the property. By the express provisions of the bankrupt act the homestead did not pass to the assignee, and he had no right or authority to sell it unless by the consent and joinder of the bankrupt and his wife, which was not given in this case.

But there is another ground upon which I think the complainants are entitled to a qualified relief. The terms of the advertisement were somewhat ambiguous, and I have no doubt that they were misled into supposing that they had acquired a title to the property free and clear of all encumbrances except that of the execution. It is true, that neither the bill nor the cross-bill set forth, in terms, that there was a misunderstanding as to the conditions of the sale, but taking them together it is quite apparant that there was. In such cases a court of equity has a judicial discretion to set aside the sale. Rorer on Judicial Sales, § 421; *Laight* v. *Pell*, 1 Edwards' Ch. 577; *Le Fevre* v. *Laraway*, 22 Barb. 167; *Veeder* v. *Fonda*, 3 Paige, 94-97.

In *Anderson* v. *Foulke*, 2 Harris & Gill, 346, 357, it is said that in Maryland, as well as in England, "if there should be made to appear, either before or after the sale had been ratified, any injurious mistake, misrepresentation or fraud, the order of ratification will be rescinded, and the property again sent into the market and resold." This power has been frequently exercised in cases where the land was stated to be greater in quantity than it turned out upon actual survey; or where it was sold for a greatly inadequate price; or where

the auctioneer, intentionally or otherwise, misled the bidders as to the time when the sale would take place; or when, under any other circumstances, proposed bidders, without any negligence of their own, are prevented from attending the sale." I see no reason why this course may not be properly pursued in the case. While the assignee did not intentionally mislead the purchaser, the notice of sale would naturally lead a person to suppose that the property was to be sold subject to a certain lien and to that lien only, and the complainants in this case were in all probability misled by it.

It seems to me that substantial justice will be done by granting the complainants a decree setting aside the sale, and subrogating them to the rights of Hardin, the purchaser under the execution sale. The proper course will then be for Hardesty and wife to petition the bankrupt court for their exemption. This question being determined, the assignee will know exactly what he is to sell, and the purchaser what he proposes to buy. I express no opinion in this case as to whether, in fact, Hardesty and wife are entitled to the homestead claimed by them.

A decree will be entered in accordance with this opinion.