<div align="right" style="font-style:italic">NEW-YORK,<br>Oct. 1815.<br>JACKSON<br>v.<br>WATERS.</div>

---

JACKSON, *ex dem.* WINTHROP, *against* WATERS.

THIS was an action of *ejectment,* for lands in *Chazey,* lying within the bounds of lot No. 70., in *Dean's* patent.

The plaintiff produced the letters patent to *Elkanah Dean,* and others, issued by the colonial government of the province of *New-York,* dated the 11th of *July,* 1769, and made out a regular title, under that patent, to lot No. 70. The possession of the defendant was admitted.

The defendant produced a writing, dated the 28th of *June,* 1768, from *Francis Mackay,* who claimed under a grant from the *French Canadian* government to one *La Gauchetierre,* prior to the conquest of *Canada,* by which one *Jaques La Framboise* was permitted to take two lots of land, in *Mackay's seignory,* on *Lake Champlain,* and settle himself there. *La Framboise* had entered, in 1763, by permission from *Mackay,* but did not continue long; and again, in 1768, entered under the above writing from *Mackay,* and continued there until the *American* war, having cleared about twelve acres, when he left the premises ; and again returned, in 1794, and remained in the possession until *January* 25, 1803, when he conveyed to *Charles L. Sailley,* in fee, all his right in the said lot No. 70. in *Dean's* patent. On the 17th of *March,* 1803, *Sailley* conveyed to the defendant in fee.

*I. Emott,* for the plaintiff. The doctrine of an adverse pos-

<div style="font-size:smaller; font-style:italic">A possession taken under a grant from the French Canadian government, prior to the conquest of Canada by the British, of land in this state, is not such an adverse possession as will prevent or defeat the operation of a subsequent grant of the same land under the provincial government of New-York, but will be considered as held in subordination to the title granted by the patent of the government.</div>

NEW YORK,
Oct. 1815.

JACKSON
v.
WATERS.

* 9 Johns. Rep.
167.
† 1 Johns. Rep.
158.   10 Johns.
Rep. 477.
‡ 17 Vin. Ab. 176.
Prerog. (B d. 4.)
s. 3, 4.   Plowd.
546.   3 Dyer,
266. (b.) s. 10.
n. 10.   1 Burr.
Rep. 109.
§ 4 Johns. Rep.
165.

‖ 2 Johns. Cas.
223.

session is to be taken strictly.* It must be hostile in its commencement, and continue so.† The first entry could not be adverse, because the title to the land was in the crown. The writing held by *Mackay* was dated in *June*, 1768, and the grant to *Dean* was in 1769. The king could not be put out of possession by the mere entry of another.‡ The case of *Jackson*, ex dem. *Winthrop*, v. *Ingraham*,§ shows that the property was in the crown, and there could be no adverse possession against the crown. But was there not, in point of fact, an adverse possession? *Mackay* might have had some pretension to a preëmptive right ; but when he found that it was not recognised by the crown, he totally abandoned it. He never called on *La Framboise*, as his tenant, or demanded any rent. The possession was not adverse until 1803, when *Sailley* entered, claiming in fee. *Jackson*, ex dem. *Southampton*, v. *Cooly*,‖ is a strong case to show that *Mackay* could not, on the writing given to *Framboise*, have recovered the possession from him.

** Smith v. Burtis, 9 Johns. Rep.
174.

*Sperry*, and *E. Williams*, contra. If the entry is under colour of title, it is sufficient to make the possession adverse. It need not be a good title. No matter how defective or groundless the title may be, if the person enters claiming under it.** The intention of the party entering decides the character of such entry. There can be no doubt, in this case, that the original entry was for *Mackay's* benefit, and not for any other person. There has been a continued possession, under *Mackay*, for above fifty years ; a duration of possession long enough to bar all the world ; sufficient even against the people who, in succeeding to the rights of the crown, have disclaimed that part of the royal prerogative which prevents an adverse possession being gained against the crown. The statute bars all suits, by the people, for lands, after forty years. It is no objection that *Framboise* was out of possession from 1776 to 1794 ; for, where a person is driven out from his possession by a public enemy, the possession, in presumption of law, continues.††

†† Smith v. Burtis, above cited.

Again, the plaintiff having been out of possession for more than twenty years, cannot recover in ejectment.

*Emott*, in reply, insisted, that the doctrine as to an adverse possession against the crown, or the people, was different from the doctrine of limitations. What he contended for was, that

a person entering on the land of the people, under a pretence of title, does not prevent the people from granting the land, so as to give a good title to the grantee.

NEW-YORK,
Oct. 1815.

JACKSON
v.
WATERS.

THOMPSON, Ch. J. delivered the opinion of the court. The lessor of the plaintiff produced and proved a regular title for the premises in question, under a patent to *Elkanah Dean*, dated the 11th of *July*, 1769; and the only question in the case is, whether such an adverse possession was shown as to take away the right to recover, in this form of action. The origin of the adverse possession set up by the defendant, is that taken by *La Framboise*, in the year 1763, by permission of *Mackay*, who claimed under a grant made by the *French* government of *Canada* to *La Gauchetierre*, prior to the conquest of *Canada* by the *British*.

In the case of *Jackson* v. *Ingraham*, (4 *Johns. Rep.* 182.) it was held, by this court, that we could not notice any title to land not derived from our own government; that grants from the *French* government were to be treated as nullities, and absolutely void, and could not afford any legal evidence of title, which we could recognise. And, if such be the light in which these pretended titles are to be viewed, the possession taken under these grants ought also to be considered as unavailing, for any purpose. It cannot be deemed a possession in hostility to any private or individual right; but, rather, as a controversy between the two governments, and in no way affecting individual claims, further than they were recognised and secured by the treaty of 1763. No such right is established in the present case. The permission given by *Mackay* to *La Framboise* is extremely vague and indefinite. It did not relate to any lot in particular, but was only a general permission to go on two lots in his *seignory*. It was, substantially, a promise, that, when he should receive a title, he would convey to *La Framboise*; so that *Mackay* himself did not pretend to have any title thus vested in himself. Whatever right might have been supposed to pass by this permission, does not appear to have been followed up, or ever afterwards noticed, by either party. No consideration was paid by *La Framboise* for the land; no rent claimed or demanded by *Mackay*; and it is reasonable to presume, under the circumstances attending these lands, thus held, that, whatever pretended right he might once have had, was

NEW-YORK,
Oct. 1815.

given up and abandoned by him. The possession thus held by *La Framboise* could not prevent the operation of the patent to *Dean*, in the year 1769, and must be considered as held in subordination to the title granted by the patent.

The doctrine of this court, with respect to adverse possession, is, that it is to be taken strictly, and not to be made out by inference, but by clear and positive proof. Every presumption is in favour of possession in subordination to the title of the true owner. (9 *Johns. Rep.* 167.) It must be hostile in its inception, and continued so for twenty years; and must be marked by definite boundaries. (1 *Johns. Rep.* 156. 2 *Johns. Rep.* 230.) The possession held by *La Framboise*, prior to his conveyance to *Sailley*, in 1803, cannot be deemed adverse, if his original entry, under *Mackay*, is not to be so considered, as it clearly is not, it being taken under a foreign government, which we must reject as a legitimate source of title. The plaintiff must, accordingly, have judgment.

<div align="right">Judgment for the plaintiff.</div>