JOHN H. HELLER, JR., et al., as Executors of and Trustees under the Will of JOHN H. HELLER, Deceased, Respondents, *v.* WILLIAM COHEN, Appellant.

1. APPELLATE DIVISION — REVERSAL — NEW TRIAL. The Appellate Division, upon reversing a judgment, must grant a new trial unless it is manifest that no possible proof applicable to the issue could entitle the respondent to recover.

2. SPECIFIC PERFORMANCE. Rules governing the enforcement of specific performance of contracts for the sale of land collated.

3. PARTITION — REFEREE'S DEED. If a referee's deed in partition covers premises other than those described in the complaint and directed

| 154 | 299 |
|---|---|
| 155 | 590 |
| s155 | 625 |
| 154 | 299 |
| 157 | 212 |
| 154 | 299 |
| 159 | 15 |
| 154 | 299 |
| 160 | 162 |
| 160 | 311 |
| 154 | 299 |
| 162 | 220 |
| 162 | 262 |
| 162 | 459 |
| 154 | 299 |
| a164 | 377 |
| 154 | 299 |
| a165 | 399 |
| 154 | 299 |
| 167 | 420 |

by the decree to be sold, it is without authority and passes no title to the purchaser.

4. VENDOR AND PURCHASER — MARKETABLE TITLE — MATERIAL DEFECTS. The title of the vendor of land is not a marketable one, and he cannot compel the purchaser to accept it, where it is based, as to a portion of the premises, upon a description in a referee's deed in partition which covers premises other than those described in the decree of sale, and as to another portion he shows no record title, and it is found as an inference, not opposed to the weight of evidence, from special facts and circumstances, that such defects are material.

5. MATERIALITY OF DEFECT IN TITLE — QUESTION OF FACT. The question as to the materiality of a defect in the offered title, in an action for specific performance, is one of fact when it depends upon, and is an inference to be drawn from, circumstances; and the Appellate Division is not authorized to reverse a decision of the trial court upon such question of fact, where there is no such preponderance of proof against the result reached by it as discloses, with reasonable certainty, that its conclusion was erroneous, or against the weight of evidence.

6. ESTOPPEL. There is no principle by which the unknown act of a referee in partition, in describing in his deed other premises than those described in the complaint and decree, estops the parties to the partition action from disputing the correctness of the deed; and a marketable title in the grantee of such a deed cannot be based upon any such estoppel.

7. CORRECTION OF DEFECTS IN TITLE. The purchaser of real estate from one whose title is based upon a judicial sale is entitled to a marketable title, free from reasonable doubt, and is in nowise bound to remedy it by proceedings to correct defects in the judicial sale.

8. ADVERSE POSSESSION. The mere fact that the vendor and his predecessor in title had been in the undisturbed possession of the premises described in a contract of sale for more than twenty years, without proof that the entry was under a particular conveyance, exclusive of any other right, does not of itself warrant a determination that their title has become perfect through adverse possession under a written conveyance, as against the true owner.

9. TITLE SUBJECT TO LITIGATION. The purchaser of real estate ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation where the title may depend upon a question of fact, as, where he would be required to resort to parol evidence to sustain the vendor's title by adverse possession.

10. VARIANCE IN DESCRIPTION OF LAND. A variance in the description of land in instruments essential to the title, such as between stating the place of beginning in one as the "northwest" corner of certain streets and in the other as the "southwest" corner, cannot be disregarded or changed, in support of an offered title, in an action to compel the purchaser to perform his contract, where there is no sufficient description in the instrument sought to be changed to plainly indicate the property

intended and also to show that there is an error in the description which may be disregarded and the property still clearly identified.

*Heller* v. *Cohen,* 9 App. Div. 465, reversed.

(Argued October 27, 1897; decided November 23, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1896, which reversed a judgment in favor of defendant entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term, and directed a judgment absolute in favor of the plaintiffs.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Danforth* and *Samuel B. Hamburger* for appellant. The obligation of the defendant to purchase was upon condition that the vendor had a good and marketable title of record, and if the evidence fell short of establishing such a title the purchaser was not bound to accept it. (Fry on Spec. Perf. § 573; *Flureau* v. *Thornhill*, 2 W. Black. 1078; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Greenblatt* v. *Hermann*, 144 N. Y. 13.) A court of equity will not, by its interference, compel a purchaser to accept a title unless it is free from all doubts, either as to a matter of fact or law, or if it is so clouded by apparent defects that prudent men, knowing the facts, would hesitate to take it. (*B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *McPherson* v. *Schade*, 149 N. Y. 16.) The plaintiffs, at the time they tendered a deed to the defendant, had no title to the north 100 feet of the premises described therein. (2 R. S. ch. 5, part 3, tit. 3, p. 316; *Clapp* v. *Bromagham*, 9 Cow. 306; *Postley* v. *Kain*, 4 Sandf. Ch. 508; *Doubleday* v. *Heath*, 16 N. Y. 80; Alnatt on Partition, 56; *Moore* v. *Onslow*, Cro. Eliz. 759; *Taylor* v. *Layer*, Cro. Eliz. 743, 760; *Striker* v. *Kelly*, 2 Den. 323; *Stone* v. *R. W. Co.*, 4 M. & C. 121.) The authority to make partition or sale depends upon the performance of certain preliminary acts prescribed in the statute and which must, in all cases, be shown to have been performed when title is sought to be established under such a sale or partition.

(2 R. S. 318, §§ 5, 10, 60; *In re N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 191; *Denning* v. *Corwin*, 11 Wend. 654; *Corwithe* v. *Griffing*, 21 Barb. 9; *Masten* v. *Olcott*, 101 N. Y. 158; *Jenkins* v. *Fahey*, 73 N. Y. 360; *Gallatin* v. *Cunningham*, 8 Cow. 361.) The effect of the record in partition was properly regarded by the court at Special Term as conclusive upon the rights of the parties. (*Cole* v. *Hall*, 2 Hill, 625; *Castle* v. *Matthews*, Lalor [Supp. to Hill & Denio], 438; *Masten* v. *Olcott*, 101 N. Y. 152.) The defendant had a right to an indisputable title — not merely a title valid in fact, but a marketable title, which could again be sold to a reasonable purchaser, or mortgaged to a person of reasonable prudence as a security for a loan of money. (*Moore* v. *Williams*, 115 N. Y. 592; *Ferry* v. *Sampson*, 112 N. Y. 418; *Bernstein* v. *Nealis*, 144 N. Y. 347; 2 R. S. 200, § 154.) The plaintiffs are estopped by the record in the partition proceedings. (Greenl. on Ev. §§ 527, 538, 539; *Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; *Murray* v. *Deyo*, 10 Hun, 3; 95 N. Y. 219; 52 N. Y. 399; 50 N. Y. 381.)

*A. Stern* and *Bailey & Sullivan* for respondents. Courts will construe a deed and description therein according to the intention of the parties, and for that purpose will disregard erroneous facts, when there is sufficient left in the description to correctly locate and identify the premises. (*Bookman* v. *Kurzman*, 94 N. Y. 272; *Robinson* v. *Kime*, 79 N. Y. 147.) Assuming for the purpose of argument that this deed was ineffectual, the plaintiffs have, notwithstanding, a good title. (*Ottinger* v. *Strasburger*, 33 Hun, 466; 102 N. Y. 692.) The reference in all the deeds to the will of Thomas White, and following the erroneous description, sufficiently identifies the property and cures the defect. (*Thayer* v. *Finton*, 108 N. Y. 399; *Grandin* v. *Hernandez*, 29 Hun, 399.) The referee's deed was sufficient to convey the title. (*Croghan* v. *Livingston*, 17 N. Y. 225; *Meyer* v. *Boyd*, 51 Hun, 291; *Swettenham* v. *Leary*, 18 Hun, 284; *Reed* v. *Farr*, 35 N. Y. 113; *Baldwin* v. *Brown*, 16 N. Y. 359.) If the deed to Thomas White and

all subsequent deeds are void for uncertainty, plaintiffs have a good title by adverse possession. No adjoining owner or any other person can have any possible claim to any portion of these premises. (*N. Y. S. Co.* v. *Stern*, 46 Hun, 206 ; *O' Connor* v. *Higgins*, 113 N. Y. 511 ; *Ottinger* v. *Strasburger*, 33 Hun, 466 ; 102 N. Y. 692 ; *Murray* v. *Harway*, 56 N. Y. 344 ; *Shriver* v. *Shriver*, 86 N. Y. 575 ; *Hoepfner* v. *Sevestre*, 30 N. Y. S. R. 296.) This title does not rest upon any disputed question of fact or doubtful question of law. (*Holly* v. *Hirsch*, 135 N. Y. 590.) The Appellate Division had the power to render final judgment in favor of plaintiffs. (Code Civ. Pro. § 1317; *Price* v. *Price*, 33 Hun, 432 ; *Dammert* v. *Osborn*, 140 N. Y. 47 ; *Wood* v. *Baker*, 60 Hun, 337.)

MARTIN, J. On the fourth day of December, 1893, the parties to this action entered into a contract for the purchase and sale of certain real estate in the city of New York. The plaintiffs, in consideration of the sum of one hundred thousand dollars, five thousand dollars of which was paid at the execution and delivery of the agreement, and the remainder to be paid on the delivery of the deed on or before the first day of February, 1894, agreed to sell to the defendant certain premises which were described therein as follows : " Beginning on the southerly side of Grand street at a point distant seventy-five feet eleven and one-half inches westerly from the corner formed by the intersection of the southerly side of Grand street with the westerly side of Chrystie street; running thence southerly one hundred and twenty-five feet one inch ; thence westerly parallel, or nearly so, with Grand street twenty-five feet one inch; thence northerly one hundred and twenty-five feet and three inches to the said southerly side of Grand street; and thence easterly along said southerly side of Grand street twenty-five feet to the point or place of beginning, be all said several distances and dimensions more or less. The premises hereby intended to be conveyed being now known and designated as and by the street number two hundred and forty-five Grand street, as now built upon and

inclosed, together with all fixtures in said premises belonging to the parties of the first part."

At the time named the plaintiffs tendered to the defendant a deed of the premises described in the agreement, which he refused to accept. He declined to accept the title offered upon the grounds: 1. That the description of the premises in the conveyances, through which the plaintiffs claimed title, was indefinite and insufficient to convey the premises described in the agreement. 2. That in 1867 they were sold under a decree in partition and purchased by the plaintiffs' testator, but that the referee appointed to make such sale, without authority, changed the description in the deed he gave, so that it did not conform to that contained in the complaint, and, hence, the deed was invalid; and, 3, that a survey of the premises disclosed that they commenced eleven and one-half inches west of the point mentioned in the deeds to the plaintiffs' testator and his grantors, immediate and remote, and, therefore, the deed tendered did not convey the whole of the premises agreed to be purchased, and also included land to which the plaintiffs had no title.

Subsequently, this action was commenced to compel a specific performance of the agreement by the defendant. It was defended upon the ground that the plaintiffs could not give a good or marketable title to the premises.

On the trial at Special Term, it was held that the title offered was not a marketable one, for the reasons: *First*, that from 1810 to 1867 the premises had been described in the various conveyances through which the plaintiffs claimed title, as commencing at a distance of seventy-five feet from the northwest corner of Chrystie and Grand streets, while the description in the contract commenced at a point seventy-five feet eleven and one-half inches from the southwest corner of Chrystie and Grand streets; *second*, that such conveyances did not locate the premises with sufficient certainty to properly identify them; and, *third*, that, although the deed to the plaintiffs' testator correctly described the premises, it was unauthorized and invalid, and, hence, the plaintiffs acquired

no title to the property described in the agreement between the parties. The court also held that if the defendant was compelled to take a deed of the land described in the contract, it would include nearly one foot of land on the western boundary to which the plaintiffs had shown no record title. The Special Term dismissed the plaintiffs' complaint on the merits, and granted a judgment in favor of the defendant for the sum of five thousand dollars which he paid upon the execution of the contract, with interest from the fourth day of December, 1893, and also for the sum of two hundred and fifty dollars counsel fee for examining the title to the premises, together with costs.

From this judgment the plaintiffs appealed to the Appellate Division. That court reversed it, and directed a judgment in favor of the plaintiffs for the relief demanded in the complaint, with costs of the trial and upon the appeal. The validity of that judgment is to be determined here.

The decision of the Appellate Division, so far as it directed the entry of a judgment in favor of the plaintiffs, was clearly unauthorized. Upon reversing a judgment, that court must grant a new trial unless it is manifest that no possible proof applicable to the issue could entitle the respondent to recover. It must affirmatively appear that he cannot succeed upon a new trial. That it is improbable is not sufficient. (*Foot* v. *Ætna L. Ins. Co.,* 61 N. Y. 571; *Goodwin* v. *Conklin,* 85 N. Y. 21, 26; *Capron* v. *Thompson,* 86 N. Y. 418, 421; *Guernsey* v. *Miller,* 80 N. Y. 181.) Obviously the Appellate Division had no authority to direct a judgment absolute against the defendant. Consequently it follows that, in any event, a new trial should be granted.

But, beyond that, the question is presented whether the defendant was not entitled to the relief granted by the Special Term. If so, then the judgment entered upon the decision of the Appellate Division must not only be reversed, but the judgment of the Special Term should be affirmed as well. This court has so recently and in so many cases examined the question as to the circumstances under which specific perform-

ance of a contract for the sale of land will be decreed, and stated the principles of law which should control in such actions, that any extended discussion of those questions is quite unnecessary at this time. We need only to state briefly the rules established by this court, which we deem applicable to this case.

(1) A purchaser at a judicial sale will not be compelled to take a doubtful title, and where irregularities or defects exist in the proceedings upon which the title rests, that require further or other action to cure them, and so prevent a performance of the contract of sale by the vendors at the time fixed, the objection of the purchaser, based upon the existence of those defects, should not be overruled, but he should be relieved from his contract. (*Toole* v. *Toole,* 112 N. Y. 333.)

(2) Where a vendee seeks to rescind a contract for the sale of real estate on account of defect of title, the question as to the materiality of the defect is one of fact when it depends upon and is an inference to be drawn from circumstances. (*Stokes* v. *Johnson,* 57 N. Y. 673.)

(3) To entitle a vendor to specific performance, he must be able to tender a marketable title. A purchaser ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value. If it may be fairly questioned, specific performance will be refused. (*Vought* v. *Williams,* 120 N. Y. 253, 257; *Shriver* v. *Shriver,* 86 N. Y. 575, 584; *Fleming* v. *Burnham,* 100 N. Y. 1.)

4) So, where there is a defect in the record title which can be supplied only by resort to parol evidence, and the title may depend upon questions of fact, the general rule is that the purchaser will not be required to perform his contract. (*Irving* v. *Campbell,* 121 N. Y. 353; *Holly* v. *Hirsch,* 135 N. Y. 590, 598.)

(5) The right of specific performance by a decree of a

court of equity rests in judicial discretion, and may be granted
or withheld upon a consideration of all the circumstances and
in the exercise of such discretion. (*Miles* v. *Dover Furnace
Iron Co.*, 125 N. Y. 294, 297; *Seymour* v. *Delancey*, 6
Johns. Ch. 222; *Margraf* v. *Muir*, 57 N. Y. 155; *Gotthelf*
v. *Stranahan*, 138 N. Y. 345, 351; *McPherson* v. *Schade*,
149 N. Y. 16, 21.)

The only title the plaintiffs' testator had to one hundred
feet of the premises in question was under a deed made by a
referee in a partition action between the then owners of the
premises. The premises sought to be partitioned in that action,
so far as they included the land in question, were described in
the complaint as follows: "All that certain lot, piece or
parcel of ground, with the buildings thereon erected, situate,
lying and being in the Tenth Ward of the City of New York,
beginning at the distance of seventy-five feet from the north-
west corner of Chrystie (formerly First) Street on Grand
Street, and runs south one hundred feet, more or less, to Isaac
Berrian's ground by a straight line; then west twenty-five
feet, more or less, to Thomas White's ground; then north one
hundred feet to Grand Street, more or less, and then down
Grand Street to the place of beginning, twenty-five feet, more
or less." The foregoing was the only description of them
contained in the complaint therein. Subsequently, that case
was referred to a referee to take proof of the facts alleged.
As to the property in question he reported that the decedent,
under whom the parties claimed, obtained title thereto through
a deed from one William Schotts to him, dated May 1, 1821,
which was produced, and that the decedent had been in posses-
sion of the premises described in the complaint more than
twenty-five years prior to his death, and was in possession at
that time.

The testimony taken on the trial before the referee in
that action is contained in the record, and shows that the
proof related only to the premises as described in the com-
plaint. Upon his report the Special Term entered a decree
directing the property first described in the complaint, which

was the property in question, to be sold, and the same referee was appointed to make such sale. In that decree the property which he was directed to sell was described in the same manner as it was in the complaint. It was sold by him and purchased by John H. Heller, the plaintiffs' testator. The referee, however, when he gave a deed of the premises, instead of describing the property as it was described in the complaint and decree authorizing the sale, changed the description therein by altering the point of commencement so that it began at the southwest corner of Grand and Chrystie streets instead of the northwest corner of those streets. That alteration in the description was made without any order of the court or any other authority whatsoever. After making the sale, the referee made his report to the court, which was to the effect that he had sold these premises as described in the complaint for the sum of $37,400. That report was subsequently confirmed by the Supreme Court, and the referee was directed to convey to the purchaser the premises as described in the complaint and decree.

Thus it is seen that in the report of the referee, in the order directing the sale, in the referee's report of sale, in the order confirming it, in the order directing a conveyance, and in the proof before the referee, the same description was given of the premises as was given in the complaint in that action.

If the description in the complaint is controlling, then it is clear that the plaintiffs' testator by the referee's deed obtained title to only a portion of the one hundred feet which were included in the premises which the plaintiffs agreed to sell and convey to the defendant. The fact that that deed described the premises sold by the plaintiffs to the defendant can hardly be regarded as changing the situation. Obviously, the referee had no title to the premises, and hence could transfer none except such as he was ordered by the court to convey. His duties were ministerial in their nature, and, consequently, he possessed no authority to vary the judgment or decree directing the sale or to convey or transfer any property except in pursuance of its directions. (*People ex rel. Day* v. *Bergen,*

53 N. Y. 404.) The sale was valid only as far as it was in compliance with the decree in that action. So far as the deed covered premises other than those described in the complaint and directed by the decree to be sold, it was without authority and passed no title to the purchaser.

Moreover, the premises described in the contract, which the plaintiffs by this action seek to compel the defendant to perform, included eleven and one-half inches of ground on the westerly side, to which the plaintiffs showed no record title. Upon these facts the learned trial judge found that the plaintiffs' title was not a marketable one. We are of the opinion that this finding was authorized by the proof and that the Appellate Division was not justified in reversing the judgment of the Special Term.

Obviously there were imperfections or defects in the plaintiffs' chain of title. Under the rules established by the decisions of this court, the question as to the materiality of a defect is one of fact when it depends upon and is an inference to be drawn from circumstances. Here there were special facts and circumstances to be taken into account and considered by the trial court in determining the materiality of the defects in the plaintiffs' record title, and the effect of the plaintiffs' inability to convey that portion of the land to which they had no title and which was included in the contract between the parties. As the materiality of these defects in the plaintiffs' title was a question of fact, the learned Appellate Division was not, we think, authorized to reverse the decision of the Special Term, as there was no such preponderance of proof against the result reached by it as disclosed, with reasonable certainty, that its conclusion was erroneous, or against the weight of evidence. "To sustain a reversal on the facts by an intermediate court, it must appear that the decision of the trial court is against the weight of evidence, or that the proof so clearly preponderates in favor of a contrary result that it can be said, with a reasonable degree of certainty, that the trial court erred in its conclusions." (*Foster* v. *Bookwalter*, 152 N. Y. 166, 168.)

But it is said that even if the deed given by the referee to the plaintiffs' testator was invalid, still, the heirs of his grantor would be bound by the description in the referee's deed, upon the ground that they sold the property, received the proceeds, and are, therefore, estopped from disputing the testator's title to the premises as described therein. It is difficult to perceive the grounds upon which such an estoppel could be based. The parties to the partition action were doubtless served with a copy of the summons and complaint, or summons and notice of object of action, which disclosed that the action was for the partition of the premises described therein. As the decree of the court authorized the referee to sell the premises thus described, and none other, how the unknown act of the referee in describing other premises in his deed would estop the parties from disputing its correctness, is not quite apparent. We hardly think it can be held that the plaintiffs have a marketable title based upon any such estoppel.

The learned justice of the Appellate Division who delivered the opinion of that court in this case, stated that the purchaser at the referee's sale was entitled to a conveyance of the property described in the complaint in that action, since he bought and paid for it. This must be admitted. But the difficulty with the title obtained by the plaintiffs' testator lies in the fact that the referee disregarded the description contained in the complaint and the decree directing the sale, and made a new description of his own, which included one hundred feet of the property which the plaintiffs agreed to convey to the defendant, while he was authorized by the decree to sell the property described in the complaint, which constituted only about one-half of it.

It may be that the purchaser under the partition sale, or his representatives, may apply to and obtain from the Supreme Court a correction of the record in the partition action, and thereby perfect the title to the premises in the plaintiffs. But the defendant should not be required to bear the burden and expense of such a proceeding. He was entitled to a market-

able title, free from reasonable doubt, and was in nowise bound to remedy its defects. (*Toole* v. *Toole, supra.*)

Again, it is said that the plaintiffs' title had become perfect through the adverse possession of their testator. The learned Appellate Division, although it assumed to do so, was not in a position to determine that question. The proof was not sufficient to require such a determination by the Special Term, and it declined so to hold. The reversal of that determination and a finding by the Appellate Division that the plaintiffs had a title by adverse possession, were unauthorized. There are cases where title by adverse possession may, and will, be upheld. If there is no disputed question of fact, and the possession has been clearly adverse and undisturbed for the required period, the title may be sustained. But even in such a case that class of titles is not looked upon with much favor by persons who contemplate purchasing the property or loaning their money thereon, or by the courts. (*Hartley* v. *James*, 50 N. Y. 38.)

To establish title by adverse possession, it must be shown that the person holding the possession did so in open hostility to the rights of the true owner. The presumption is that the possession is in subordination to the actual title. (*Doherty* v. *Matsell*, 119 N. Y. 646.) It is not sufficient that he has merely held the possession undisturbed for the period of twenty years. The fact that the plaintiffs and their predecessor in title were in the undisturbed possession of the land for twenty years and upwards, does not show that the possession was adverse. It does not necessarily follow therefrom that their entry was under the deed mentioned, exclusive of any other right, and this was essential to constitute an adverse holding under a written conveyance, which would divest the title of the true owner after twenty years. It may be that there was an adverse possession for the requisite period. But the court cannot draw that inference from the evidence in this case, as the most that can be said to have been established by it is that the plaintiffs' testator was in the undisturbed possession of the premises for a period of more than twenty years. (*Kneller* v. *Lang*, 137

N. Y. 589.) The theory upon which the legal title to land may be acquired by one holding it adversely for that period, is that it is to be implied because of the acquiescence of the true owner in the hostile claim of title for that time. (*Baker* v. *Oakwood*, 123 N. Y. 16.) We think no such implication arises from the proof in this case.

Moreover, to sustain the plaintiffs' title by adverse possession, the defendant or his grantees would be required to resort to parol evidence, and it may be that it will depend upon an issue of fact as to which some dispute may arise. Under such circumstances, the purchaser ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation where the title may depend upon a question of fact. (*Irving* v. *Campbell, Holly* v. *Hirsch, supra.*)

The respondents likewise urge that the case of *Brookman* v. *Kurzman* (94 N. Y. 272), and other similar cases cited, are controlling upon the question of the sufficiency of the description contained in the deed and judgment under which they claim title, and insist that they justified the Appellate Division in changing the description as to the place of beginning from the northwest to the southwest corner of Grand and Chrystie streets, and in holding that the premises included in such amended description were the premises to which the plaintiffs had title. We do not think those cases sustain that decision. It will be found that in each of the cases cited there was a sufficient description in the conveyance there under consideration not only to plainly indicate the property intended, but also to show that there was an error in the description which might be disregarded, and the property still clearly identified. It was upon the ground that the property could be clearly identified by the description as it existed in those cases, and that it plainly showed that there was an error in the description, that those decisions were based. But they have no application here, as the case at bar is unlike the cases cited. Here, unless the point of beginning is established, there is no sufficient description to identify the premises with that certainty

which should exist before the defendant ought to be required
to accept the title offered. Nor was there any proof that the
premises could be identified by the adjoining lands which was
sufficient to satisfy the rules relating to this subject.

Unless the title offered was marketable and free from
reasonable doubt, the defendant ought not to be required to
accept it. While we do not regard the plaintiffs' title as
actually bad, and while it is quite probable that a good title
may be established, yet we think the proof was insufficient to
show that it was so far free from any reasonable doubt as to
require its acceptance by the defendant, and hence that the
trial court properly dismissed the complaint and awarded the
defendant the relief to which he was entitled.

The judgment of the Appellate Division should be reversed,
and the judgment entered upon the decision of the Special
Term affirmed, with costs to the appellant in the Appellate
Division and in this court.

All concur.

Judgment reversed. _____