(57 App. Div. 185.)

## CUTTING v. BURNS.

(Supreme Court, Appellate Division, Second Department. January 25, 1901.)

1. ADVERSE POSSESSION—CLAIM OF TITLE.

 Defendant and his ancestors were shown to have been in possession of premises for 40 years, and to have lived in small houses erected thereon. Defendant's brother testified that he saw the "papers" for the property 20 years before, but did not remember their contents. His sister testified that she had read the paper to her mother 25 years before, when she was 13 years old, and that it was signed by F., and recited that the mother had paid $1,400, and that it looked like a receipt, and was spoken of by her mother as a receipt, and it stated that she bought so many acres of land at a certain street corner, and that the deed was in the house when it burned. F. was a subagent of the one employed to collect rents. *Held* not sufficient to show the existence of a deed to the premises, which would raise the presumption that the occupation was adverse, under Code Civ. Proc. § 369, providing that the possession of real estate taken under a written instrument will be deemed to be adverse.

2. SAME.

 Under Code Civ. Proc. § 369, providing that the occupation of real estate, entered into under a written instrument, shall be deemed adverse,

evidence that the person occupying real estate had a deed therefor is not sufficient to raise a presumption that the possession was adverse, without showing that it was taken thereunder.

3. SAME—INCLOSURE.

The erection of a fence around a house and lot for the protection of property therein, and its existence for a few years till destroyed for a bonfire, is not sufficient to establish a substantial inclosure, as proof of adverse possession.

4. SAME.

Under Code Civ. Proc. § 368, providing that the mere occupation of premises will be deemed to be subordinate to the legal title, a possession of real estate for 40 years is not sufficient to show title by adverse possession, on the theory that the original occupation was adverse, where there is no evidence of acts showing the adverse nature of the holding, and the persons in possession do not assert their rights thereto when asked to pay rent.

5. SAME.

Where the defendant in an action to recover real estate against a tenant at will or at sufferance appears and defends, but does not object that there is no proof of the giving of the 10-days notice to quit which is required to be pleaded by Code Civ. Proc. § 2236, a judgment against him will not be reversed for a failure to prove such fact.

Appeal from municipal court, borough of Brooklyn.

Action by Lydia S. Cutting, as executrix, against Henry Burns, for the recovery of real estate. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Franklin Bartlett (Sumner Gerard, on the brief), for appellant.
A. J. Gilchrist (Jacob Neu, on the brief), for respondent.

JENKS, J. This is an appeal from the judgment of the municipal court dismissing on the merits proceedings to remove the defendant from certain real property situate on Columbia and Bowne streets, in the borough of Brooklyn, of dimensions defined by 191 feet, 232 feet, 85 feet, and 113 feet, respectively. It is stipulated in this case that the plaintiff is the owner and holder of the record title of the premises in dispute. Though plaintiff did not actually occupy the land, if she have the legal title she is constructively in possession, unless the premises are in the actual hostile possession of another under a claim of title. Bliss v. Johnson, 94 N. Y. 235. The defendant resists under claim of title as an occupant, and such claim requires consideration of an alleged deed. An occupant claiming upon a written instrument is deemed to hold the premises adversely if he entered into possession under claim of title, exclusive of any other right, founding the claim upon such instrument as being a conveyance of the premises in question, and if there has been a continued occupation and possession of the premises included in the instrument, or some part thereof, for 20 years, under the same claim. Section 369, Code Civ. Proc. It appears that the mother of the defendant lived successively in two small frame houses on parts of the premises for over 40 years. The first house is not definitely described, but, so far as the testimony shows, it was a small house, that was burned down; and the present house was then built on

another part of the lands, without a cellar, resting on the ground and on spiles, and consisting of two rooms on the ground floor. Whether there is an upper story or not is not clear. It was put up by a son-in-law of the defendant's mother. But proof of mere undisturbed possession for 20 years or more does not satisfy the requirements of section 369 of the Code of Civil Procedure. Kneller v. Lang, 137 N. Y. 589, 33 N. E. 555. Such occupation is deemed to have been subordinate to the legal title (section 368, Code Civ. Proc.), and the burden was upon the defendant to show the adverse possession by clear and cogent evidence (Heller v. Cohen, 154 N. Y. 299, 311, 48 N. E. 527; Jackson v. Waters, 12 Johns. 365, 367; Wickham v. Conklin, 8 Johns. 220). I think that there is no sufficient evidence to establish a written instrument of conveyance. The contention is that such an instrument existed, was kept by the mother of the defendant in a wardrobe of the house, and that it was destroyed in the fire which burned up that house many years ago. The defendant seeks to prove this instrument by the testimony of his brother and of his sister. The brother was asked whether he ever saw "a deed of that property to anybody," and he answered that he saw "papers of that property. * * * It was a kind of book form, and I looked them over. Don't just exactly remember what it read. It is twenty years ago. I saw them with my mother." The sister was asked: "Do you remember seeing a deed of this property in your mother's possession?" She answered:

"Yes, sir; I am the child that read it for her. That was twenty years ago. It just said that she paid so many hundred dollars on it. The paper said so much money that she had paid out. Mr. Franklin signed the paper. It said that she had paid $1,400. It did not state what property it was. I could not just exactly say. These papers were in the house when it was burned. They were kept in the wardrobe. My mother had them, and had in it an old black-silk dress."

### Cross-examined, she said:

"It was a kind of colored paper; something of a blue. It looked like a receipt. It came in an envelope. It was folded up. I saw her name, and then seen the top, 'Isabella Burns.' That was twenty-five years ago. I am thirty-eight now. I read the name on the outside of the paper. It said, 'Received of' somebody '$1,400.' It just stated that she bought so many acres of ground. The name was Franklin. I saw it on the end, where he had receipted it. I did not take any notice of anything else, besides the name of Franklin on it. I could not say whether it was his first or his last name. Q. You only remember it was a receipt with Franklin's name on it, your mother's name on it, $1,400 on it, and describing certain acres of land? A. So many acres of ground, etc. [Sic.]"

### Redirect:

"Q. You say it was a receipt? A. That is what she told me,—it was a receipt for the money she had paid. Q. A receipt or a deed? A. A receipt that she had paid for the property on that corner. The receipt described the property that she had bought. It described so many acres. It just stated that she had bought this property; this property she had bought; this property that she was on. It said where it was,—Columbia and Bowne streets. It did not say acres, as I know of. I mean Columbia and Bowne streets. It said so in the receipt. Q. What else did it say on the receipt,—dimensions or size? A. [Sic] It did not say anything; just said a receipt for the money. Q. Just a receipt for certain money for something or other on Columbia and

Bowne streets, and Mr. Franklin's name you saw there; are you sure of it? A. Yes."

Neither the defendant nor his brother ever saw this "paper." This testimony is insufficient to establish the existence of a written instrument conveying the premises in question. The fact that the only witness positively swears that the "deed" or "receipt" or "paper" was signed by Franklin justifies strong inference that the paper, if it existed, was not a deed or conveyance, in view of the fact that Franklin was but the subagent of the agent who collected the rents, while such signature and the status of the signor might well indicate that the paper was in truth a "receipt" for rent. Without expressing any opinion that the testimony justified any further inference, it is perhaps considerate to conjecture that the little girl of years ago may have seen in the hands of her mother a "receipt" for ground rent, signed by Franklin; that, in her ignorance, she knew not what to term it; and that the woman grown may now believe that the child once saw a "deed." But assuming that such vague, indefinite, unreliable, and contradictory testimony established the existence of a written instrument, even then it is not shown that it included the premises in suit with the exactitude required by the law. Sedg. & W. Land Title, § 767; Lane v. Gould, 10 Barb. 254; Jackson v. Woodruff, 1 Cow. 276; Same v. Camp, Id. 605. And there is not the slightest proof as to when the "deed" was made. It cannot be assumed that the entry was under the "deed." Heller v. Cohen, supra. If the defendant's mother were in occupancy as a tenant on sufferance or by license, or what not, the mere pretended conveyance from Franklin would be insufficient as a basis for adverse possession. McRoberts v. Bergman, 132 N. Y. 73, 30 N. E. 261. There is no sufficient testimony to show that at any time after she received the "deed" she or her successor was "flying the flag" of adverse possession, as I shall presently attempt to show.

If the defendant's case be considered as not founded upon a written instrument, it must fail, also. It must be shown that the possession was hostile in its inception. Knolls v. Barnhart, 71 N. Y. 474, 479; Jackson v. Parker, 3 Johns. Cas. 124; Sedg. & W. Land Title, § 570. Nothing shows this. So far as the history of the occupancy is concerned, it appears from the defendant's testimony that his mother, and after her the defendant, lived in the houses successively for more than 40 years. In weighing the fact upon the question of adverse possession, we "should keep in mind the character of the property, and discover, if practicable, the object of owning it, by the uses to which it would ordinarily be applied, that we may the better understand not only the mind with which it was possessed, but, on the other side, the mind with which the possession, such as it was, was acquiesced in." Corning v. Nail Factory, 44 N. Y. 577. We are apprised that this was realty situate in a city, at the junction of city streets, lying vacant and unimproved for many years, and in the possession of executors and trustees. There are scores or hundreds of similar lots of land in our cities which are held vacant and unimproved until the growth of the compact city or the opening up of transit shall enhance their value for the market or justify their

improvement. Meantime such lands, as a rule, are not a source of income, nor can they be put to any profitable use. And so the good nature of the owner, or his desire to gain some trifling ground rent, allows the hut or shanty of a squatter or a tenant on sufferance or at will to be placed upon the land. Such occupancy can interfere neither with the "present use" nor with the future purpose of the owner of such lands. Now the theory upon which the defendant must succeed is that his legal title must be implied because of the acquiescence of the owner to a hostile claim. Heller v. Cohen, supra. To hold that one who is in occupancy under the circumstances of this case, weighted, as he is, with the presumption that his occupation is in subordination, can establish adverse possession by mere lapse of years, would be to go too far, in the absence of all proof of actual, open, notorious, continued, or exclusive acts, or of any claims continually asserted and maintained that such possession was hostile to the title of the plaintiff. There is testimony to the effect that there was at one period, for a few years, a fence put about this house for the purpose of "taking care of the stuff there," which went to feed a bonfire on election night, and which was not replaced. But this temporary act for such purpose is not enough to establish a substantial inclosure of the land, or of any part thereof, as proof of an adverse possession. Cleveland v. Crawford, 7 Hun, 616, 622. Steeley, the plaintiff's agent, testified that he took charge of the property 12 or 13 years ago, and that when he went to the various tenants for rentals he called upon Isabella Burns, who said she had no money for rent, and referred him to her daughter, who was her support. He returned to Mrs. Burns, who said she was "a pretty old lady, and pretty feeble, and it would not be worth his while to put her out." She died, and thereafter, about 6 years ago, Steeley went to the defendant, who was in the house, and told him he would have to pay rent or move, and defendant said he had no rent. He was permitted to remain until last year, when he was again asked to pay rent. He said:

"I can't pay no rent. I got no position to pay rent. What am I going to do? If I had a steady job, had a place to go, I would leave the place and get out." If he got ten dollars, "he would move out and leave the damn thing stand there."

The defendant testifies that Steeley said to him:

" 'What are you going to do, Hen?' 'I don't know what to do,' I says. 'I ain't got no money.' He says, 'Tell you what I'll do: I will give you ten dollars,' he says, 'to get out of it and tear the damn thing down.' So I says, 'Come down and see the wife.' She says, 'No; you better go up and see the sister.' Next week he came again, and I said I could not settle with him. I said I claimed to be the owner, and mother before me."

In Colvin v. Burnet, 17 Wend. 564, 569, the court say:

"It is well known that a single lisp of acknowledgment by the defendant that he claims no title fastens a character upon his possession which makes it unavailable for ages. No matter that, in the language of these pleas, he and those under whom he claims may have holden peaceably, and without the hindrance, molestation, or even claim of the owner."

See, too, De Lancey v. Hawkins, 23 App. Div. 8, 14, 49 N. Y. Supp. 469, affirmed in 163 N. Y. 587, 57 N. E. 1108.

68 N.Y.S.—18

The learned counsel for the respondent insists that the disposition of the proceeding was right, for the reason that the plaintiff omitted to prove the notice required by section 2236 of the Code of Civil Procedure. But the defendant appeared generally, and joined issue and went to a hearing on the merits, and made no motion at any time based upon the alleged defect. He thus waived the jurisdictional defect, and even if it were necessary for the plaintiff to prove such service, as part of his case, the defendant cannot first avail himself of the point upon this appeal. McNish v. Village of Peekskill, 91 Hun, 324, 326, 36 N. Y. Supp. 1022; Haines v. Railroad Co., 145 N. Y. 235, 238, 39 N. E. 949; Flandrow v. Hammond, 148 N. Y. 129, 135, 42 N. E. 511.

The judgment of the municipal court must be reversed, and a new trial ordered, with costs to abide the event. All concur, except SEWELL, J., taking no part.