Walter B. Reynolds, J.
The plaintiff herein has brought an action under article 15 of the Real Property Law to determine the ownership and extent of a parcel of land formerly occupied, and used for school purposes, by School District No. 3 of the Town of Horse-heads, Chemung County. The interests of this school district were taken over by a larger school district, known as Central School District No. 1 of the Towns of Baldwin, Big Flats, Gatlin, Erin, Horseheads and Veteran, Chemung County, and Cayuta, Schuyler County. Since there was no longer any need for the schoolhouse and land of old School District No. 3, it was sold at an auction April 28, 1956, to the plaintiff. He received a quitclaim deed describing the property as follows: ‘‘ All that tract or parcel of land situate in the Town of Horseheads, County of Chemung, and State of New York, bounded and described as follows: Being a school house with land appurtenant thereto situated at the corner of Sickles Road and County Rt. 52.”
The defendant holds record title to the land on which the schoolhouse is situated by virtue of the fact that his deed includes the area on which the schoolhouse is situated, and no exception has been made, either in his own deed or elsewhere in the chain of title to this surrounding farm, for the schoolhouse. The defendant’s farm borders the schoolhouse property on the south, east and west, with Sickles Road providing the boundary on the north.
A trial was held before the court without a jury. The plaintiff reEes on the school district having gained good title by virtue of adverse possession. The defendant denies that the school district gained any title through adverse possession, and, secondly, he claims that, even if the school district be held to have gained title by adverse possession, it still failed to convey anything to plaintiff because of the vague and inconclusive description in the deed.
No evidence was produced at the trial as to the transaction by which the old school district took possession of this land for purposes of a schoolhouse. It was stated that no deed to the *1027 school district could be located. No records of the school district were produced, nor was any mention made of them. One of defendant’s -witnesses testified that he told the plaintiff, at a time prior to the auction, that the land came from the “ New-kirk Estate ”, and that it was to be used for school purposes and then revert. This was not, however, testimony as to the fact that the school district held only a determinable fee, but simply testimony as to statements made in the past to the plaintiff. There was no evidence that the school district paid any rent or had any sort of agreement with regard to the use of the land. There is no evidence that the old school district at any time recognized any title ‘ ‘ superior ’ ’ to that which it held itself. The assessor for the Town of Horseheads testified the property was exempt from taxation. He stated: “It is on the exemption book as school district number three.”
No attempt was made at the trial to determine when the school district went into possession of this tract. Most of the witnesses went to school on the property involved and were called to testify as to the extent of the school grounds. Each of these witnesses was, of course, asked when he or she attended, school on this property. The earliest date mentioned was 1890. However, from the fact that neither party was able to produce competent evidence as to the transaction by which the school district originally took possession of this property, the inference is that it took place at a time many years before 1890. At any rate, the court is certain that the possession of this property for school purposes has been continuous since at least 1890.
Under the circumstances of this case, where the defendant holds record title to the property, the court must start with the presumption that he has been in possession of the property within the last 15 years (Civ. Prac. Act, § 35). If this presumption is rebutted, as it has been here, the court must next deal with the presumption, also contained in section 35 of the Civil Practice Act, that occupation of the premises by the school district has been ‘ under and in subordination to the legal title ”. (See, also, the statement of this presumption and its use in Doherty v. Matsell, 119 N. Y. 646; Heller v. Cohen, 154 N. Y. 299; Lewis v. New York, & Harlem R. R. Co., 162 N. Y. 202; Hinkley v. State of N. Y., 234 N. Y. 309; Archibald v. New York Cent. & Hudson Riv. R. R. Co., 157 N. Y. 574; Cutting v. Burns, 57 App. Div. 185 and Staples v. Schnacken berg, 148 App. Div. 161.) This presumption is applicable ‘ ‘ unless the premises have been held and possessed adversely to the legal title for fifteen years before the commencement of the action.” (Civ. Prac. Act, § 35.)
*1028 It thus becomes incumbent on the court to determine if the school district has satisfied the elements of adverse possession. The classic statement of the elements of adverse possession in New York is contained in the opinion in Belotti v. Bickhardt (228 N. Y. 296, 302): “ There are five essential elements necessary to constitute an effective adverse possession; first, the possession must be hostile and under clakn of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous. If any of these constituents is wanting, the possession will n'ot effect a bar of the legal title.”
The court is satisfied, from the testimony of the witnesses, that School District No. 3 actually occupied, in an open and notorious fashion, exclusive of all others and for an uninterrupted period commencing in at least 1890 and continuing down to 1956, the schoolhouse and land appurtenant thereto. The testimony of plaintiff’s witnesses was directed toward showing the exclusive, open, uninterrupted and actual occupation for the required length of time, and there is nothing that can be, drawn from the testimony of defendant’s witnesses to indicate" that these particular elements of adverse possession were not satisfied. The question thus narrows itself down to a consideration of the first requisite above, namely, that the possession be hostile and under claim of right.
It was stated in Barnes v. Light (116 N. Y. 34, 39-40) quoting, in part, from La Frombois v. Smith (8 Cow. 589, 603): “ ‘ The actual possession and improvement of the premises, as owners are accustomed to possess and improve their estates, without any payment of rent, or recognition of title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner, and unless rebutted by other evidence, will establish the fact of claim of title.’ Possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another.”
This presumption of holding under claim of title is also stated or applied in Monnot v. Murphy (207 N. Y. 240, 244); Belotti v. Bickhardt (228 N. Y. 296, 302, supra); Smith v. Egan (225 App. Div. 586) and Schoenfeld v. Chapman (280 App. Div. 464, 466). It is stated and specifically applied in favor of a school district in Platt v. Smith (127 N. Y. S. 2d 66 [Supreme Ct., Onondaga County, 1954, Gorman, J.]); Culk v. Feldmeier (2 Misc 2d 1029 [Supreme Ct., Herkimer County, 1955, Hudson, J.]) and in the decision in Millious v. Board of Educ. of Newark Val. Cent. *1029 School (13 Misc 2d 945 [Supreme Ct., Tioga County, 1955, Newman, J.]). It may well be that, in effect, the original presumption in this case, that of holding ‘ ‘ under and in subordination to ” the record title (Civ. Prac. Act, § 35), is being overcome by the use of another presumption, to wit, that the premises were occupied under a claim of right. When the parties fail to produce, for example, any testimony concerning the nature of the conveyance to the school district or the attitude of the school trustees toward the rights of the district in the property involved, this is the dilemma with which the court is faced. However, on closer analysis, it is apparent that the original presumption is not being overcome simply by the use of another presumption. The original presumption is rebutted by evidence of open, uninterrupted, exclusive possession, accompanied by the usual acts of ownership, for the statutory period, which, in turn, raises the presumption that possession was under claim of right. ‘ Claim of right ’ ’ is only one of five elements (see quote from Belotti v. Bickhardt, supra) necessary to prove adverse possession — all of them need to be clearly proven in order to overcome the presumption arising in favor of the record title by virtue of section 35 of the Civil Practice Act — but proof of “ claim of right”, since it often involves nothing more than a mental attitude on the part of defunct organizations or long-deceased persons, must be, of necessity, by presumption. This is not, then, simply a case of rebutting one presumption by the use of another. In both the Schoenfeld and Millious cases (supra, in each of which the record title was in one party and the other party was claiming by adverse possession), the court recognized both of the presumptions involved here and applied the latter in favor of the party claiming adversely.
Further analysis of the ‘ ‘ claim of right ’ ’ problem fails to shake the court’s determination that the school district gained good title by adverse possession. The defendant’s attorneys maintain that the school district went into possession of the land under an arrangement whereby it would revert back to the original owners when it was no longer used for school purposes. There is no evidence, however, to support this contention. Certainly the court cannot indulge in a presumption to this effect. The inference is equally permissible that the school district took possession under a parol gift of the land. The fact that the school district chose to sell its interest in the land at a public auction indicates that it did not consider that the land was subject to a reverter. In the deed to the plaintiff the *1030 school district is described as the “ owner of the premises. ’ ’ And the fact that the property was carried on the assessment rolls in the name of the school district, and was exempt from taxation, indicates that ownership of the land was considered to be in the school district. Circumstances almost identical to those in this case brought the Supreme Court of Missouri to the conclusion that the school district held good title by virtue of adverse possession (Consolidated Dist. No. 4 of Jackson County v. Glandon, 363 Mo. 1). This must also be the conclusion of this court.
In addition to his contention that the school district did not gain title by adverse possession, defendant also maintains, as a separate ground for defeating plaintiff’s claim herein, that the deed from the school district to plaintiff is void for vagueness. Defendant’s attorney cites a statement in Warren’s Weed on the New York Law of Beal Property (Vol. 1, p. 970, § 1.02) that, ‘ ‘ Where the description contained in the deed is so vague and indefinite that the property as there described is not capable of being identified as the land conveyed by the grantor, the deed is void for uncertainty and no record can increase its efficacy.” (Citing Peterson v. Martino, 210 N. Y. 412.)
It is apparent, however, that the description in the deed identifies the property conveyed by the grantor. The exact boundaries may not be described, but this omission can be •supplied by the court with the aid of parol evidence (Mullen v. Washburn, 224 N. Y. 413). As was stated in Lipton v. Bruce (1 N Y 2d 631, 636) “ it has always been the rule that the language of a deed must be so interpreted and applied as to be meaningful and valid (People ex rel. Myers v. Storms, 97 N. Y. 364) and that * * the intent of the parties as evidenced by the deed and the circumstances surrounding the making thereof must be given expression wherever it is possibe to do so without violating law and reason (Jackson v. Marsh, 6 Cow. 281).” Certainly the deed conveyed a sohoolhouse structure. Defendant objects that the phrase “with land appurtenant thereto ” is meaningless because land as a general rule does not pass as “ appurtenant ” to land. The usual statement of this rule, however, points out that land may pass as “ appurtenant ” to land where such appears to have been the intention of the parties (26 C. J. S., Deeds, § 106, subd. b, par. [1]; 16 Am. Jur., Deeds, § 295). Furthermore, this is not strictly an attempt to pass title to land appurtenant to land, and the cases cited by defendant to support its statement of the rule are clearly distinguishable. This deed purports to pass title to a *1031 building and land appurtenant thereto. The entire description of the land conveyed by this deed is contained in the phrase ‘ ‘ a schoolhonse with land appurtenant thereto ”, in contrast with those deeds (held not to convey “ appurtenant” land) wherein a parcel might be described by metes and bounds, and other land as “ appurtenant thereto ”. Even if this deed were viewed as conveying a building alone, the court might still reach the same conclusion, for it is a rule of construction that the conveyance of a building carries with it a freehold interest in the land on which it is located and which is a necessary incident of its use and enjoyment (16 Am. Jur., Deeds, § 280; Ogden v. Jennings, 62 N. Y. 526). This rule, however, has its drawbacks : the court is limited to a determination of that land which is absolutely necessary to the enjoyment of the building, and the intent of the parties to the deed does not enter into consideration. There is no need for an application of this rule here because the court finds, from the wording of the deed to plaintiff and the circumstances surrounding the sale, that it was the intent of the school district to convey all of that land which it gained title to by adverse possession. The court holds that the deed was sufficient for that purpose. The final problem is then raised, i.e., to determine the boundaries of the land occupied adversely by .the school district.
Since the school district occupied the premises under an unwritten claim of title, only the premises actually occupied, and no others, are deemed to have been held adversely (Civ. Prae. Act, § 39). Under the circumstances of this case, the land cannot be said to have been “ actually occupied” unless it has been either (1) protected by a substantial enclosure, or (2) usually cultivated or improved (Civ. Prae. Act, § 40). The cultivation or improvement ” required must be construed with reference to the nature, character, condition and location of the property under consideration; it must be of such a nature that the true owner has notice of an actual, and not merely constructive, occupation (Ramapo Mfg. Co. v. Mapes, 216 N. Y. 362). Here, the land, set aside for school purposes, was “occupied in the manner in which school premises are normally occupied. A schoolhouse and outbuildings were constructed on it; a flagpole was erected; certain areas to the sides of the school building were used for parking and playgrounds (see Board of Educ. of Cincinnatus Cent. School Dist. No. 1 v. Dormire, 126 N. Y. S. 2d 225).
The building on the premises in dispute faces north. There is no question but that the northern boundary of the area *1032 occupied by the school district is Sickles Road. ' The testimony varies with regard to the amount of land used by the school district on the south, east and west of the buildings. Certain landmarks, however, have been established: an elm tree on the east, outbuildings on the south, and a group of pine trees on the west. Certainly the land up to and including these landmarks was continually and openly used by the school district for play areas, parking and other purposes. Numerous witnesses, including the defendant, testified to the presence at one time of a stump fence on the south, east and west of the property. This stump fence ran to the outside of the above-mentioned landmarks, i.e., it included them within its enclosure. If the location of this stump fence could be agreed upon, it would determine the boundaries of this property. However, the testimony is conflicting on its location. It is doubtful that the adverse possession of the school district extended much beyond the afore-mentioned landmarks; moreover, there is testimony that the stump fence ran only a few feet distant from each of them. Therefore, the court orders that the limits of this property be as follows: the boundary line on the east should consist of a north-south line located three feet east of the elm tree; on the south, it should consist of an east-west line located three feet south of the southernmost edge of the outbuildings (as they existed at the time of the existence of the stump fence); and, on the west, the boundary should be a north-south line located three feet to the west of the westernmost pine tree. The intersection of these lines with themselves and with the center-line of Sickles Road encloses, as nearly as the court is able to determine, the approximate area occupied by the school district. In order to finally settle the boundary lines of this property the plaintiff is to have a survey made, locating the boundaries in accordance with this opinion: this survey will be made a part of the order to be entered herein.
It is hereby adjudged that the plaintiff is the owner in fee simple absolute of the premises described herein and that the defendant be barred from all claim or interest in said property.
Submit findings and judgment in accordance with this opinion.
All motions to dismiss as made by defendant are hereby denied.