F. WILLIAM SOHNS, Respondent, v. FRANK S. BEAVIS et al., Appellants.

**Real property — sale of land at auction — purchaser under terms of sale, which do not give fair notice of building restrictions on land, entitled to reasonable time to investigate — when purchase may be rescinded and action maintained for amount paid at sale and expense of examining title.**

A description given to a purchaser by the auctioneer before a sale of real estate at auction gave notice of restrictions against nuisances, but none as to restrictions upon the right to build. The building restrictions set out in the terms of sale, signed by the purchaser and which he was informed, immediately after the sale, were "all right," were not fairly or sufficiently described. *Held*, that a sale of land at auction is not governed by the strict rules applicable to formal contracts made with deliberation after ample opportunity to investigate and inquire; that the terms of sale did not give fair notice of the restrictions afterward put in the deed tendered to the plaintiff; under the circumstances surrounding the sale and the assurance given after the sale, the purchaser should have had a reasonable time to investigate, and, upon discovery of the actual facts, he had the right to rescind the transaction and sue for the recovery of the amount paid down, together with the reasonable expenses incurred in examining the title.

*Sohns* v. *Beavis*, 133 App. Div. 717, affirmed.

(Argued December 1, 1910; decided January 3, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 29, 1909, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and granting a new trial.

The action was brought to recover earnest money paid

down upon a sale of real estate at auction, as well as expenses incurred in examining the title. The plaintiff rejected the deed tendered on the adjourned law day on account of the following covenant appearing therein immediately after the description : " Subject nevertheless to the restrictive covenants contained in the deed from the Bankers Realty and Security Company to Frank S. Beavis, dated April 29th, 1907, and recorded May 3, 1907, in Liber 67 of Conveyances relating to the Annexed District, at page 390, reference to which is had for a more particular description."

The deed thus referred to contained the following covenants on the part of the grantee therein, the defendant Beavis, who is the present vendor : " The party of the second part, by the acceptance thereof, for himself, his heirs and assigns, hereby covenants and agrees as follows :

" I. That there shall not be erected upon any portion of said premises any house or dwelling less than two stories in height, or any house, not having a cellar, or costing less than $2,500 or any house or dwelling commonly known as a tenement, or any house with a roof of the character by description known as a flat roof, or any store for the sale of merchandise.

" II. That all buildings erected shall stand back at least twenty (20) feet from the line of the street or avenue on which said lots front, for the purpose of forming court yards, in front of said premises. This covenant shall not, however, apply to stoops or open piazzas attached to residences. That there shall not be erected any stable or outbuilding on said premises within sixty (60) feet of the line of the street or avenue on which said lots front; that any such stable or outbuilding shall be used only for private family purposes, and not for business, and no stable or outbuilding shall be erected without the written consent of the party of the first part.

" III. That there shall not be erected or permitted upon said premises any fence or hedge above four (4) feet in height nor any fence or hedge of a character and kind except as approved in writing by the party of the first part.

" IV. There shall not be erected upon any portion of said

premises any carpenter shop, blacksmith shop, cow stable, slaughter house, pig sty, brass foundry, nail or other foundry or fertilizing manufactory, or any manufactory of gunpowder, dynamite, glue, varnish, vitriol, ink or turpentine, or the tanning, dressing or preparing of skins, hides or leather, or any bone-boiling establishment or manufactory of baking powder, cream of tartar, brewery, distillery, or other offensive, noxious or dangerous trade or business whatsoever.

" V. That all these covenants shall run with the land until January 1st, 1920, when they shall cease and terminate, *except, however, that it is mutually understood and agreed that the above covenants and restrictions, or any of them, may be altered and annulled at any time prior to said January first, nineteen hundred and twenty (1920), by written agreement by and between the party of the first part hereto, its successors or assigns, and the owner or any of the owners of the premises hereby conveyed or any part thereof, and such agreement shall be effectual to alter or annul said covenants and restrictions as to any portion of said premises without the consent of any owner or owners of any other premises situate in Tremont Terrace."*

Upon the trial it appeared that in the advertisement of the auction delivered to the plaintiff several days before the sale by the defendant Kennelly, the auctioneer, it was stated that the property was restricted as to nuisances, but there was no statement as to any other restriction. The terms of sale, however, contained the following: " The property is sold by a good title in fee simple, and will be conveyed by usual warranty deed free and clear of all incumbrances with restrictions as to buildings and against nuisances." Just before the sale these terms were read by a representative of the defendants to the crowd assembled, but the plaintiff testified that he did not hear it, as he was not present when the sale began. Right after the sale the plaintiff signed, without reading, a contract whereby he agreed to comply with " the terms and conditions as announced at the sale," and a few minutes later, when he paid his earnest money, he was required to sign a

similar paper to which the formal terms of sale were annexed. The words relating to restrictions had been interlined in ink in the printed terms of sale. He had never purchased real estate at auction before, and he did not discover what the restrictions were until he employed a lawyer to look into the matter. Upon learning their real nature he refused to complete the purchase on account of the last clause in the list of restrictions. There were seventy-three lots in the Tremont terrace and all were sold at the auction in question.

The trial justice dismissed the complaint on the merits without stating any ground in his formal findings, but in his opinion he based his action on the ground that "if the purchaser is aware of the existence of an incumbrance he is chargeable with knowledge of its scope, and in the absence of fraud he cannot avoid the purchase because of his failure to apprise himself of the actual facts." The Appellate Division, one of the justices dissenting, reversed upon the ground, among others, that "one who purchases lands in an auction room is not bound by the general rule governing cases of sale by contract which charges the purchaser of lands subject to incumbrances with knowledge of the nature of such incumbrances in the absence of deceit or fraud." The defendants, upon the usual stipulation, appealed to this court.

*H. B. Bradbury* for appellants. The purchaser was bound by the written terms of sale which were read before the sale was begun and which the respondent subsequently signed. ( *Vanleer* v. *Fain*, 6 Humph. [Tenn.] 104 ; *Ashcom* v. *Smith*, 21 Am. Dec. 437 ; *Mead* v. *Hendry*, 1 U. C. Q. B. 238 ; *Rankin* v. *Matthews*, 29 N. C. 286 ; *Cannon* v. *Mitchell*, 2 S. C. 320.)

*Edward R. Koch* for respondent.

VANN, J. We agree with the learned Appellate Division that a sale of land in the haste and confusion of an auction room is not governed by the strict rules applicable to formal contracts made with deliberation after ample opportunity to

investigate and inquire. When the plaintiff was required to sign the terms of sale or lose the benefit of his bid, he could not ascertain the extent of the restrictions relating to buildings which then came to his notice for the first time. While he then learned that there were building restrictions he did not know their nature and he was told by the clerk to whom he paid the money that " these restrictions are all right. They are only for private houses and you are all right." The description delivered to him by the auctioneer before the sale gave notice of restrictions against nuisances, but none as to restrictions upon the right to build. When he signed the terms of sale within a few minutes after the property had been struck off to him, he had no chance to investigate but had to act at once. The building restrictions were not fairly or sufficiently described, because the extraordinary feature, of which good faith required disclosure, was in no wise alluded to. Under the circumstances he had the right to assume that the " restrictions as to buildings " therein contained were of the ordinary kind for " private houses " and that they were " all right," according to the assurance given, or at least that they were not so unprecedented and unreasonable as to make the title unmarketable. When compelled to sign so suddenly, although he then knew that the restrictions extended to buildings, as was said by Mr. Justice Scott, writing for the Appellate Division, " he was entitled to a reasonable opportunity to ascertain what the restrictions were." If they had turned out to be within the range of ordinary experience, even if strict and severe, the plaintiff would have been bound to complete his purchase, for the circumstances surrounding the sale would afford protection only against a situation so far beyond reason as to amount to imposition. The restrictions, however, were not within reason or precedent, and would not have been regarded as possible even by the most prudent and cautious. If the covenant in the original deed had been to build only out of Carrara marble or Russian malachite, or not to build at all, clearly the plaintiff would not have been bound to comply with the terms of sale, although he had

signed them.   Such a covenant would be ·fraudulent upon its face, for it is a fraud for one person to take undue advantage of another to his pecuniary injury.

Building restrictions if mutual and uniform throughout a large tract consisting of many lots, may be an advantage instead of a detriment to all concerned.   Through the protection afforded against cheap buildings, offensive trades and irregular location of building lines with reference to the street line, the value of every lot may be materially increased, for the restraint upon all the lot owners may give such character to the neighborhood as to make it desirable for residences of the best class.   " Restrictions as to buildings," in the absence of any further description, according to common usage, means restrictions of the general character thus alluded to and would be so understood by the average purchaser. Those words do not mean restrictions which do not restrain except at the election of a remote grantor.   A restriction " with a string to it" does not restrain if its creator sees fit to pull the string.   As was said below : " The advantage to a purchaser of real estate from a covenant against nuisances is not that his own property is restricted, but that his neighbors' property is."   The plaintiff had the right to assume from the printed terms of sale that all the purchasers were restrained in the same way and to the same extent that he was, himself, and that no one could vary or release without the consent of all.   A club held by a former owner by retaining control of the right to build is not a building restriction in any proper sense.

The restrictions in question were not usual, mutual, uniform or reasonable, because they restrained one party and by express agreement opened the door wide to the other.   During the period of thirteen years, the original grantor of the entire tract, " its successors and assigns," even after it had sold every lot, could agree with " the owner or any of the owners " of any lot or any part of any lot, " to alter or annul said covenants and restrictions as to any portion of said premises, without the consent of any owner or owners of any other premises situate in Tremont Terrace," which comprised the

18

seventy-three lots sold at the auction. This singular provision was not written in the deeds of the lots so sold, nor did it appear otherwise than by reference to the record of a deed given by a realty company conveying the tract to the defendant Beavis, for whom the sale at auction was held. A restrictive covenant of this kind would enable the original grantor to hold every one of its grantees and their grantees at its mercy. They would be bound and helpless, while it would be in a position to exact and extort. After the tract had been well built up with beautiful homes, unless the exactions of the company were complied with it could open any part of it to any kind of business from a livery stable to a saloon. In the absence of local regulations it could bring virtual destruction to any dwelling house, however valuable for residential purposes, by selling the right to tan hides or make dynamite upon either side thereof. It could permit every alternate lot owner to build up to the street line and prevent the others from building within twenty feet of the line. It could place at defiance all the lot owners but one by releasing the latter from the covenants by which all the others were bound. The question is not what will be done, but what may be done.

We think that the restrictions, so imperfectly described in the terms of sale, did not give fair notice of the restrictions afterward put in the deed tendered to the plaintiff; that under the circumstances surrounding the sale and the assurance given right after the sale he had a reasonable time to investigate; that upon discovery of the actual facts he had the right to rescind the transaction and sue for the recovery of the amount paid down together with the reasonable expenses incurred in examining the title.

The order of the Appellate Division should be affirmed and judgment absolute rendered against the defendants upon · their stipulation, with costs in all courts.

Cullen, Ch. J., Gray, Haight, Willard Bartlett, Hiscock and Collin, JJ., concur.

Order affirmed, etc.