FRANCES T. MCANDREW et al., Respondents, *v.* WILLIAM R. LANPHEAR, Appellant.

Fourth Department, March 12, 1952.

*W. Earle Costello* for appellant.

*Cole & Walker* for respondents.

McCurn, J. This action is to compel specific performance of a contract for the purchase of real property. The defense is that the seller has not tendered a marketable title. The appeal is from a judgment in favor of the plaintiffs entered upon the decision of an Official Referee.

On April 29, 1882, John W. Conlogue conveyed the parcel of land here in question to the Keuka Lake Club. The deed contained the following provisions:

" It is agreed between the parties that no hotel, restaurant or business of buying and selling the usual articles of sale by a hotel or restaurant shall be carried on on said premises, nor said premises used or occupied for any other purpose than a club house, and that in case said party of the second part, or its successors, shall at any time erect any hotel or restaurant or the business appertaining to a hotel or any other business or otherwise than for club purposes to be carried on on said premises, then and in such case said lands and all improvements thereon shall revert to said party of the first part, his heirs and assigns. * * *

" And it is further mutually agreed that whenever said party of the second part shall cease to use or occupy said premises for the uses and purposes of a club house, said John W. Conlogue shall have the first right or option to repurchase said premises for the sum of five hundred dollars, such right to so purchase and said purchase money to be paid within six months after said premises shall cease to be used and occupied for club purposes and as a club house, the party of the second part to pay all taxes and assessments which may be lawfully levied or assessed upon said premises from the date hereof and so long as said party of the second part shall use or occupy said premises by virtue of [this] conveyance."

In 1933, the Keuka Lake Club obtained a Supreme Court order authorizing it to convey that property to one Grace Dudley, or her assigns. Pursuant thereto, the club conveyed to one W. Sterling Cole, the assignee of Grace Dudley, subject to the following provisions: " That the party of the second part shall quietly enjoy the said premises, except as to the conditions contained in the deed to the party of the first part from John W. Conlogue, dated April 29, 1882, and recorded in the Steuben County Clerk's Office in Book 184 of Deeds at page 52. * * * That the party of the first part will forever warrant the title to said premises, except as to the conditions contained in the deed to the party of the first part from John W. Conlogue, dated April 29, 1882 ".

W. Sterling Cole later conveyed the premises to the plaintiffs herein by quitclaim deed. The restriction contained in the second paragraph of the provisions of the deed above quoted is, we believe, a covenant personal to the grantor and the grantee. We agree with the finding of the learned Official Referee that " The club functioned as such long after his [Conlogue's] death so that this provision never quickened into life and its potency was wiped out by the death of the grantor."

The problem on this appeal relates to the first paragraph of the provisions in the deed as above quoted. In construing the first paragraph under consideration here, it should be pointed out that the heirs of Conlogue, in whom the right to the reverter rests, are not parties to this action and consequently are not bound by any decision in this action.

The Referee concluded that the language employed should be construed as a covenant rather than as a condition subsequent and that because of changed conditions the covenant is no longer enforcible.

The question here is the marketability of the title and we first examine the language used in the deed for the purpose of discovering whether its construction involves any substantial question of law or facts (*Fleming* v. *Burnham,* 100 N. Y. 1). The language used does not appear ambiguous. It seems to say very clearly that in the event the grantee " or its successors " shall use the premises for any business or otherwise than for club purposes then "said lands and all improvements thereon shall revert to said party of the first part, his heirs and assigns." While it is true that courts have not looked with favor upon forfeiture provisions in deeds and ordinary doubts are often resolved in favor of construing the language as a covenant rather than as a condition subsequent, still the presence of a reverter clause is strong consideration in favor of construing it as a condition subsequent (see *Monro* v. *Syracuse, L. S. & N. R. R. Co.,* 200 N. Y. 224). We think that the language in the deed may be reasonably construed as a condition subsequent with the right of reversion in the grantor, his heirs and assigns, and that the owner of the property might be subject at any time to an action by such heirs to enforce the right of reverter upon a breach of the condition. It is not clear under the circumstances here that even if the language in question could be construed as a covenant that changed conditions are such that the owner of the property would be free from the prospect of having to defend an action in equity or at law based thereon at some future time (see *Bull* v. *Burton,* 227 N. Y. 101). If the language be construed as a condition subsequent then " The improbability that facts may some time arise to call the possibility of reverter into actual being will not create marketability in a title where it does not otherwise inhere." (*Van Vliet & Place* v. *Gaines,* 249 N. Y. 106, 109.) A title subject to future litigation or open to a reasonable

doubt is not a marketable title (*Thomas* v. *Loomis,* 273 App. Div. 680, 682; *Hollywood Plays* v. *Columbia Pictures Corp.,* 299 N. Y. 61). The title tendered here may be fairly questioned and specific performance should be refused (*Heller* v. *Cohen,* 154 N. Y. 299, 306).

In March, 1948, the plaintiffs brought an action under article 15 of the Real Property Law in which service was attempted to be made upon the heirs of John W. Conlogue by publication. This order of publication recites that " ' plaintiffs have been and will be, *with due diligence,* unable to make personal service ' on certain defendants, and that the plaintiffs are unable after *diligent inquiry* to ascertain the names and addresses of said unknown defendants ". The affidavit submitted made no mention of any effort to obtain the names or addresses of such defendants, and in itself furnishes no basis for the " due diligence " and " diligent inquiry ". The order for publication was based upon the summons and complaint and an affidavit reciting that the records of the Surrogate's office revealed that Conlogue died intestate in 1887 leaving him surviving numerous heirs at law and next of kin. The petition for letters of administration in evidence here names some fifteen nephews and nieces whose addresses at that time were set forth. The affidavit submitted upon the application for the order of publication states that the whereabouts of such persons and addresses and the addresses of their representatives, if any, are unknown to the plaintiff and further " that deponent believes that he will be unable with due diligence to make service of the summons herein upon said unknown defendants." The affidavit recites no facts as to what inquiry, if any, was made to support the conclusion. No facts are shown sufficient to give the court jurisdiction to grant the order (*Blute* v. *Fellowes,* 143 App. Div. 825; 2 Carmody on New York Practice, § 684). The judgment in that action is not under collateral attack here, and we make no decision as to its validity. We merely point out that should some one or more of the unknown defendants attempt to assert rights of reversion at any time in the future, the judgment in question would be of very doubtful protection to the title holder. Mere lapse of time will not preclude the unknown defendants from asserting their rights (*Trustees of Union Coll.* v. *City of New York,* 173 N. Y. 38).

In 1890, Mary Orcutt, a niece of Conlogue, brought a partition action in the Supreme Court naming the other nephews and nieces as defendants. Judgment in that action conveyed

the property sold on partition to Edward Bryan, a nephew of Conlogue. The real property described in the complaint appears to be to the property of which Conlogue was seized at the time of his death. However, the complaint in that action set out a description of the property which included that portion previously sold by Mr. Conlogue to the Keuka Lake Club. The complaint in the partition action made no reference to the reversionary rights of the heirs of Conlogue, nor did the Referee's deed in the partition action make any mention of them. Moreover, neither the plaintiff nor the defendants named in the partition action at that time held any vested interest on account of their reversionary rights in this particular parcel of real estate which could be the subject of a partition action. The reversionary interest which she held in common with the other heirs of Conlogue carried with it no interest in or right to possession of the real property unless or until the condition set forth in the deed from Conlogue to the Keuka Lake Club became violated. The property continued to be used as a clubhouse until some time in 1933. A mere right of reversion arising from a condition subsequent in a deed is not, prior to a breach of the condition, an estate or an interest in real property (*Upington* v. *Corrigan,* 151 N. Y. 143; *Carruthers* v. *Spaulding,* 242 App. Div. 412, 414). The partition action brought in 1890 did not, therefore, divest the heirs of Conlogue of any reversionary interest which they might possess.

We reach the conclusion that the title tendered is not a marketable title and that the judgment appealed from should, therefore, be reversed. In such circumstances the defendant is entitled to recover his down payment and the reasonable expenses incurred in the examination of the title and judgment should be awarded accordingly (*Bulkley* v. *Rouken Glen, Inc.,* 222 App. Div. 570; see, also, *Cockcroft* v. *New York & H. R. R. Co.,* 69 N. Y. 201; *Northridge* v. *Moore,* 118 N. Y. 419).

All concur, except Piper, J., who dissents and votes for affirmance. Present — Taylor, P. J., McCurn, Vaughan, Kimball and Piper, JJ.

Judgment reversed on the law and facts, without costs of this appeal to any party, and judgment directed in favor of the defendant in accordance with the opinion, without costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.