MABEL S. NICHOLS et al., Respondents, *v.* WILLIAM J. HAEHN et al., Appellants, et al., Defendants.

Fourth Department, June 18, 1959.

406

*Erickson & Erickson* (*Alton R. Erickson* and *Philip A. Erickson* of counsel), for respondents.

*George P. Rogers* and *Charles J. Mistretta* for appellants.

WILLIAMS, J.   The plaintiffs have instituted this action under article 15 of the Real Property Law to obtain a determination that they are the owners of an unencumbered fee in certain real property.   The answering defendants, Haehn, Weinstein and Wallace, dispute plaintiffs' title and they, in turn, have counterclaimed under said article 15 and have requested that plaintiffs be barred from any claim of title and that it be determined that such answering defendants are vested with clear title in fee.

The plaintiffs moved for summary judgment and the defendants countered with a similar motion. The Trial Justice found for the plaintiffs and judgment was entered accordingly. The answering defendants have appealed.

The property in question is a strip of land 66 feet wide and approximately 1,700 feet long which extends across a tract formerly owned by Amasa Starr and Huldah E. Starr, his wife, as tenants by the entirety and located in Chautauqua County, New York. This land was used for railroad purposes until 1950 when that use ceased.

On the 19th of January, 1897, the Starrs deeded an interest in this strip of land to the Jamestown and Lake Erie Railway Company, hereinafter called the railway. The deed contained the following provisions: " Said second party hereby agrees to and with said first party that in case said Railway shall at any time be abandoned then the lands heretofore described shall revert to the grantors. The said second party furthermore agrees to construct two road crossings with suitable approaches, and cattle guards at points to be designated by said first parties, and also to fence both sides of the right of way through the above described lands. Said second party also agrees to have a flag station on the lands above mentioned at or near the south line of the lands of said first parties, with a covered platform. Said second party also agrees to give to said first parties life passes on said railway."

Thereafter, and on August 25, 1897, Amasa died intestate, leaving Huldah surviving. On April 22, 1917 Huldah died intestate, leaving as her only heirs at law the plaintiffs, Mabel Starr Nichols, Elsie M. Starr Juntgen and one Oliver D. Starr, who died intestate on March 20, 1944, leaving as his only heir at law Ernest Starr, who delivered a quitclaim deed of said property to Frank Walton and Dorothy Walton, his wife, by deed dated September 2, 1955. Subsequently, Frank R. Walton died, and plaintiff Dorothy M. Walton survives him.

On the 1st day of September, 1906, Huldah Starr deeded most of the property contained in the original tract to one James Ward Packard. The description was by metes and bounds and excepted the following:

" Excepting and Reserving therefrom three (3) acres out of the south part thereof heretofore deeded by David Brownell and wife to Diantha Marsh of the said Town of Ellery.

" Also excepting and Reserving therefrom the premises conveyed by Amasa J. Starr and wife to Simeon Brownell by deed recorded in Chautauqua County Clerk's office in Liber 192 of

deeds, at page 438, containing about fifteen (15) acres of land be the same more or less.''

These exceptions were followed by this language: '' This transfer is subject also to a conveyance made by Amasa J. Starr and Huldah E., his wife, to the Jamestown and Lake Erie R. R. Co. recorded in Liber 277 of deeds at page 304.'' (The deed referred to at Liber 277 of deeds at page 304 is the 1897 deed from Amasa and Huldah Starr to the railway.) The Starr-Packard deed contained the usual recital, '' With the Appurtenances and all the Estate, Title and Interest of the said parties of the first part.'' It contained a covenant of quiet possession and a warranty clause.

In 1911 one George Bullock was appointed receiver of a railroad corporation which had become the operating successor of the original railway. About that time a real property tax foreclosure action was commenced because of tax defaults covering the railroad property here involved. On February 29, 1912, the Board of Supervisors of Chautauqua County conveyed the property to said Bullock as receiver by quitclaim deed. Thereafter, the answering defendants procured their title from a successor railroad corporation and they claim that any interest the plaintiffs might have had in the possibility of reverter was extinguished by the conveyance to Bullock. Therefore, the effect of that instrument may present a serious question which we shall review hereinafter.

It appears that by two separate deeds in 1911 and 1913, respectively, Packard conveyed substantially all of the property contained in the original Starr tract to Edgar T. Welch, who in turn conveyed to various grantees. Some of the property adjoining the railroad right of way and the fee to the right of way itself may now be vested in certain defaulting defendants and also in plaintiff Walton and in defendants Wallace, through mesne conveyances, originating in Packard. The deeds from Packard to Welch leave doubt as to whether the description covers Packard's interest, if any, in the railway roadbed. They are ambiguous in this respect.

These facts give rise to several legal problems. The first of these in logical order requires a determination of the legal effect of the deed from Starrs to the railway. The plaintiffs claim that the deed conveyed a fee upon special limitation and that the grantors retained a possibility of reverter. They contend that they have succeeded to the grantors' interests in the possibility of reverter which ripened into an estate in fee simple upon the discontinuance of the use of the land for railroad purposes.

The answering defendants, on the other hand, argue that the deed created a fee on condition subsequent in the grantee, subject to a right of re-entry on the part of the grantors.

As previously noted, the deed from the Starrs to the railway transferred title in fee with the proviso that if the railway should at any time be abandoned, the land should revert to the grantors. The language must be construed to effectuate the intent of the grantor. "No set formula is necessary for the creation of the limitation, any words expressive of the grantor's intent that the estate shall terminate on the occurrence of the event being sufficient." (1 Tiffany, Real Property [3d ed.], § 220, p. 385; see, also, 1 Simes & Smith, Law of Future Interests, § 286, pp. 342–343; 26 C. J. S., Deeds, § 110, p. 922.)

Traditionally, language such as "until," "so long as," "during" or words of similar import created a fee upon special limitation in the grantee with a possibility of reverter in the grantor (2 Powell, Real Property, § 187; Restatement, Property, § 44, *Comment 1*; 1 Tiffany, Real Property [3d ed.], § 218, p. 381; 3 Walsh, Commentaries on Law of Real Property, pp. 52–53). The basic conceptual distinction has been between normal expiration followed by automatic reversion in the case of a fee on special limitation and the right to enforce a divestment in the case of a fee on condition subsequent (1 Tiffany, Real Property [3d ed.], § 217, pp. 380–381; 20 U. of Chi. L. Rev. 215, 226).

A very sound analysis of language comparable to the present is found in *Richardson* v. *Holman* (160 Fla. 65). The deed there read in part (p. 66): "should the party of the second part cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert to and vest in the said Eugene Holtsinger and his heirs and assigns."

The Florida court concluded that the grantor intended to create a fee on special limitation, thereby reserving a possibility of reverter in the event the limit to the duration of the estate in the railway was reached.

In *Thypin* v. *Magner* (28 N. Y. S. 2d 262, 264) the court considered a limiting clause in a deed and pointed out that the deed contained "no express provision for re-entry, nor is the word 'condition' mentioned." The language was construed to create a fee on special limitation. The Restatement of Property (§ 44, *Comment 1, Illustration* 17(I)) provides the following as an illustration of an estate which terminates automatically: "to B (a railroad corporation) to have and to hold for railroad purposes, for and during the continuance of said railroad",

In the present case, it is clear from the language employed that in case the railway should at any time be abandoned, the title should revert automatically. Further, this case is unlike those situations in which the grantee is required to do some affirmative act in the future, e.g., to build a church within a reasonable time (*Upington* v. *Corrigan,* 151 N. Y. 143), or to construct a railroad within a specified time (*Nicoll* v. *New-York & Erie R. R. Co.,* 12 N. Y. 121). There was nothing for this railway to do except to continue to operate as a railway. In fact, the railway had been in operation on the land in question for a substantial time prior to the Starr deed. Upon its failure to continue in 1950, its estate reached its normal duration and terminated automatically.

We hold with the plaintiffs, therefore, that the estate created in the railway was a fee on special limitation, rather than a fee on condition subsequent.

We find no merit in the defendants' contention that the possibility of reverter was personal to Amasa and Huldah Starr. The deed did provide for certain personal rights, but the possibility of reverter obviously was designed to continue as long as the railway was in operation and not to be determined by the length of Amasa and Huldah's lives.

Having decided that the Starrs retained a possibility of reverter, it becomes necessary to determine whether such a possibility was alienable. If it was alienable, the Starrs' interest may have passed to Packard, and if so, the heirs of the Starrs would have no remaining interest therein.

Whether or not a possibility of reverter is alienable appears to be an open question in New York State. The problem has been analyzed in many different States with varying results but the weight of authority favors a finding of alienability. The Restatement of Property (§ 159 [1936]) is quite definite in including possibilities of reverter among those reversionary interests which may be conveyed: " (1) The owner of any reversionary interest in land has the power, by an otherwise effective conveyance inter vivos, to transfer his interest or any part thereof."

Section 154 of this same Restatement clarifies the scope of " any reversionary interest " specified as alienable under section 159 by providing in subdivision (3) that " A possibility of reverter is any reversionary interest which is subject to a condition precedent."

*Comment a* to section 159 distinguishes possibilities of reverter from rights of re-entry or powers of termination for purposes

of determining alienability. It states specifically that the term reversionary interest " includes all reversions and possibilities of reverter,".

Among the most persuasive recent decisions from other States are *Richardson* v. *Holman* (160 Fla. 65, *supra*); *Lacey* v. *Montgomery* (181 Pa. Super., 640); and *Brown* v. *Independent Baptist Church of Woburn* (325 Mass. 645). The *Richardson* case presents a particularly lucid discussion of the question and concludes that the possibility of reverter had been effectively conveyed. Further, the rule favoring alienability is supported by the great weight of texts on real property law, among them Powell, Real Property (Vol. 2, § 281, pp. 481–484); Burby, Real Property ([1st ed.], p. 470); Simes, Law of Future Interests (Vol. 3, § 715, pp. 159–160); Simes & Smith, Law of Future Interests (Vol. 4, § 1860, p. 176–177); and Thompson, Real Property (Vol. 4, 1955 Supp., p. 128).

Two older New York Court of Appeals cases appear to reach a contrary result. They are *Nicoll* v. *New-York & Erie R. R. Co.* (12 N. Y. 121, *supra*) and *Upington* v. *Corrigan* (151 N. Y. 143, *supra*). In each of these cases, however, the estate being analyzed was a fee on condition subsequent giving rise to a right of re-entry. The interests, however, were sometimes referred to as a possibility of reverter although no such interest was involved in either case. This language was followed in *Southwick* v. *New York Christian Missionary Soc.* (151 App. Div. 166, affd. 211 N. Y. 515) and *Trustees of Calvary Presbyt. Church* v. *Putnam* (221 App. Div. 502, affd. 249 N. Y. 111) but in neither of those cases was a possibility of reverter involved.

The authorities in favor of alienation are more persuasive and more consistent with the modern trend toward freedom of alienability. We conclude that the possibility of reverter in the present case was fully alienable. In reaching this result, we have not overlooked *Gorton* v. *Wager* (149 N. Y. S. 2d 887) which relies upon language in the *Nicoll* and *Upington* cases rather than upon the determinations actually made, nor are we unaware of the flat statement to the contrary contained in the notes of the Law Revision Commission (N. Y. Legis. Doc., 1958, No. 56 [B], p. 16).

Inasmuch as the Starr interest was a possibility of reverter and not a right of re-entry upon a condition subsequent and as it was fully alienable, we need not consider the contention of the defendants that the attempt to convey the interest by the Starr-Packard deed, prior to the discontinuance of railroad use, caused a forfeiture of that interest.

The possibility of reverter being alienable, we now consider whether it was in fact conveyed to Packard by Huldah Starr in the 1906 deed above mentioned. As aforesaid, the description covered the entire large tract by metes and bounds and then made two exceptions of parcels previously conveyed. Immediately following these exceptions was the clause: " This transfer is subject also to a conveyance " to the railway. The deed purported to convey all the estate, title and interest of Huldah Starr, the grantor.

Upon the death of Amasa Starr, Huldah acquired the sole right to convey the possibility of reverter since it possessed all of the characteristics of transferable property held by the entirety (1 Simes & Smith, Law of Future Interest, § 292, p. 351). As pointed out by the court in *Cookman* v. *Silliman* (22 Del. Ch. 303, 308) : " Now when the title reverted I see no escape from the proposition that it fell back upon them in the exact condition that it was in when it had left."

Whether or not the deed to Packard conveyed the possibility of reverter is a question of fact to be decided only after an investigation by a trial justice of all the factors bearing on the intent of the parties, including the provisions of the deed and the surrounding facts and circumstances. It may be found that Huldah Starr intended that title to the large tract and the possibility of reverter should be in the same person and therefore that she intended to convey both interests. There may, however, be persuasive reasons which would show that she intended to retain this valuable interest. These questions are not matters of law to be determined on a motion for summary judgment.

In the same manner, the later deeds from Packard to Welch and from Welch to various other grantees through mesne conveyances present questions as to whether the possibility of reverter was conveyed, for determination by a trial justice. Any ambiguities found in these deeds must be resolved as questions of fact. Under the present state of the record, a trial justice may find that the fee resulting from the possibility of reverter is in one or more persons who may or may not now be parties to this action. The factual determination may indicate that Huldah Starr conveyed the possibility to Packard, who in turn conveyed it to Welch, and that from Welch, it passed to certain ultimate grantees, among whom may be the plaintiff Walton and several of the defendants, both answering and defaulting.

Other questions of fact arise out of the tax foreclosure action and the 1912 deed from the supervisors to Bullock as receiver,

mentioned above. It is contended by the defendants and disputed by the plaintiffs that for various reasons this deed was not a true tax deed of conveyance resulting from a sale but that it merely evidenced a redemption of the property by the railway, from the taxes which were the subject of the foreclosure action. It is conceded by all parties that if the deed was in fact a conveyance by virture of a foreclosure sale, any interests of the plaintiffs or others in the possibility of reverter were extinguished as subordinate to the tax lien. On the other hand, it is also conceded that if the document merely followed a redemption from the taxes by the receiver on behalf of the railway, the outstanding possibilities of reverter would survive. This question is one of fact and must be determined as such.

As we have stated, Packard or his successors in interest may now be possessed of the fee of the property. No determination can be complete or meaningful unless Packard and such successors are made parties. We therefore direct, on our own motion, pursuant to subdivision 2 of section 501 of the Real Property Law, that any persons who have claimed or may claim any interest in the right of way, through or under Packard, be made parties. For the sake of orderliness, we further direct that the supplemental summons and the amended complaint be served upon all defendants, including those who are now in default, so that all parties may have an opportunity to file answers and participate in all further proceedings if so advised. Their possible rights are not clearly revealed by an inspection of the original complaint, and this may have caused confusion which prompted some of the defendants to default in the first instance. A proper presentation of the facts should create an awareness of the possibility of valuable rights.

With respect to these defaulting defendants, we might note that summary judgment was not properly granted against them in any event. Rule 113 of the Rules of Civil Practice specifically provides that summary judgment may be granted only after an answer has been served, and the section does not contemplate that if one of a number of defendants answers, summary judgment may be had against all (1 Bender's New York Practice, § 10.20, par. 6, p. 680). Common-law proof, sufficient to convince the court that the defaulting defendants had no interest, was a prerequisite to judgment against them (Real Property Law, § 505; Civ. Prac. Act, § 490).

The judgment appealed from should be reversed and the matter remitted to the Trial Term for determination of the factual questions involved after further proceedings have been taken in accordance herewith.

All concur. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment reversed on the law and facts and matter remitted to the Trial Term for further proceedings in accordance with the opinion, with costs to defendants-appellants to abide the event.