*269 OPINION OF THE COURT
Abraham G. Gerges, J.
In this foreclosure action, The Brooklyn Organization LLC (Brooklyn or movant) moves for an order: (1) staying any closing in this matter pending resolution of the exceptions in its title report; (2) directing plaintiff to cure said exceptions as a precondition to any sale or closing; or, in the alternative, (3) directing that the sale be vacated in its entirety and that plaintiff return the deposit paid at said sale to movant.
Facts and Procedural Background
This action was commenced to foreclose the tax lien certificate on property located at 1105 Dumont Avenue in Brooklyn and owned by defendant Mary Mayfield. A judgment of foreclosure and sale was entered on December 4, 2004 and a foreclosure sale was held on November 9, 2006. At the sale, ZZ Management LLC was the successful bidder, bidding $310,000, or more than $200,000 over plaintiffs upset price. Pursuant to the terms of sale, ZZ Management was required to pay a deposit of $37,000 to the referee and to pay the balance of the purchase price on December 11, 2006. Thereafter, ZZ Management assigned its bid to Brooklyn.[1] After requesting that First American Title Insurance Company do a title search in order to obtain title insurance, Brooklyn discovered that the deed that conveyed the property from the City of New York to Mayfield (the Mayfield deed), dated June 19, 1986, gave the City of New York a right of reverter pursuant to Executive Order No. 50 (Koch) of the City of New York (66 RCNY 10-14). First American refuses to insure title without excepting the right of reverter. Similarly, plaintiffs title company, Ticor Title Insurance Company, will not insure title over the reverter interest.
At movant’s request, plaintiff contacted the City to ascertain if it would waive its right of reverter; the City declined. Thereafter, the closing was scheduled, with time being of the essence. The closing has since been cancelled and the instant order to show cause followed.
The Terms of Sale
As is relevant to the instant dispute, the terms of sale provide that if the successful bidder fails to complete the purchase, plaintiff can elect to reschedule the sale and retain the down *270 payment, to be applied to the proceeds of the second sale, and if the premises are sold at a second sale, the purchaser will be held liable for any difference between the first and second bid.[2] The terms of sale further provide that the premises shall be sold in “as is” condition and subject to “covenants, restrictions and easements, if any, of record.”[3] Finally, as is also relevant to the instant dispute, the terms of sale provide that if the purchaser raises written objection to title, plaintiff shall have the option of providing fee title insurance from a title insurance company of his choice, at purchaser’s expense.[4]
The Right of Reverter
As is relevant herein, the Mayfield deed provides that in the event that Mayfield defaulted in her obligations to rehabilitate the premises; attempted to transfer the property before a per *271 manen! certificate of occupancy was issued without the consent of the Commissioner of the Department of Housing Preservation and Development (HPD); defaulted on a loan issued to her by HPD; or failed to pay taxes, assessments, water charges, sewer rents or other municipal charges:
“[Tjhen at the option of the City title to the Disposition Area shall revert to and revest in the City and the City shall have the right subject to the laws of the State of New York to re-enter and take possession of the Disposition Area and to terminate the estate of the Grantee. It is the intent of this Deed, that the conveyance of the Disposition Area to the Grantee is hereby made subject to a condition subsequent to the effect that in the event of any default, failure, violations, or other action or inaction by the Grantee (his permitted successors and assigns) specified in the above subdivisions of this Paragraph, failure on the part of the Grantee (its successors and assigns) to remedy, end, or abrogate such default, failure, violations, or other action or inaction, within the period and in the manner stated in such subdivisions, the City at its option may declare a termination and reversion of Grantee [’s] interest in the Disposition Area and any improvements thereon in favor of the City of the title and of all the rights and interests in and to the Disposition Area conveyed by this Deed to the Grantee and that such title and all rights and interests of the Grantee, and any assigns or successors in interest to and in the Disposition Area, shall revert to and revest in the City.” (Mayfield deed art 4.)
The Parties’ Contentions
In support of its motion, Brooklyn alleges that plaintiff, which is a trust that holds City tax liens, is trying to force it to close, while still subjecting it to the City’s right of reverter. Movant further argues that First American has raised the issue of whether the City has already become the owner of the subject property pursuant to its right of reverter because of the failure of Mayfield to comply with the terms of her deed. Movant thus concludes that since it would be unfair to allow the City to foreclose on its tax lien, while still holding its right of reverter, the court should exercise its equitable power and set aside the sale.
In opposition to the motion, plaintiff argues that both the judgment of foreclosure and the terms of sale contain explicit *272 language providing that the premises are being sold subject to any covenants, restrictions and declarations. Hence, movant is not entitled to an order setting aside the sale on the ground of the existence of the City’s right of reverter. Moreover, ZZ Management could have discovered the right of reverter prior to bidding on the property and Brooklyn could have performed a diligent title search prior to agreeing to an assignment. Plaintiff further argues that movant is similarly not entitled to the return of its down payment, since the terms of sale provide that if purchaser fails to pay the balance of the purchase price, the referee will retain the deposit (terms of'Sale, paras 2 [2]; 4).
The Law
As a threshold issue, it must be recognized that “[a]s a general rule, a purchaser at a foreclosure sale is entitled to a good, marketable title” (Jorgensen v Endicott Trust Co., 100 AD2d 647, 648 [1984]; Heller v Cohen, 154 NY 299, 306 [1897]). In this regard, the court notes that:
“A marketable title has been defined as one that may be freely made the subject of resale (Trimboli v Kinkel, 226 NY 147, 152; see 62 NY Jur, Vendor and Purchaser, § 48; 3 Warren’s Weed New York Real Property, Marketability of Title, § 2.01). It is one which can be readily sold or mortgaged to a person of reasonable prudence, the test of the marketability of a title being whether there is an objection thereto such as would interfere with a sale or with the market value of the property (Brokaw v Duffy, 165 NY 391, 399; Heller v Cohen, 154 NY 299, 306; Vought v Williams, 120 NY 253, 257; Schwartz, Real Estate Manual, p 581).” (Regan v Lanze, 40 NY2d 475, 481-482 [1976].)
As is relevant to the instant dispute, the possibility of reverter has been held to render title unmarketable (see e.g. Van Vliet & Place, Inc. v Gaines, 249 NY 106, 109 [1928]; accord Bloom v Kernan, 146 AD2d 916, 917 [1989] [the proof submitted raised triable questions of fact as to the marketability of title of the property due to the reverter clause]; McAndrew v Lanphear, 280 App Div 6, 9 [1952] [the improbability that facts may some time arise to call the possibility of reverter into actual being will not create marketability in a title where it does not otherwise inhere]).
The issue of how the right to reverter is to be exercised is, in some cases, controlled by the language of the deed that created *273 such right. Hence, in a case decided on facts similar to those at issue herein, where the City of Peekskill conveyed a parcel of real property pursuant to a deed that provided that the property would “revert automatically to the City” if defendant failed to bring the buildings on the premises into compliance with all local and state codes within nine months after the date of conveyance, the Court held that the City made a prima facie showing of entitlement to summary judgment declaring that title to the property automatically reverted to it by proving that defendant failed to comply with the requirements of the deed (City of Peekskill v Schurr, 14 AD3d 643, 643-644 [2005]; see also Nichols v Haehn, 8 AD2d 405, 410 [1959] [it was clear from the language employed in the subject deed that in case the railway was abandoned at any time, title should revert automatically]). The Court in City of Peekskill further held, however, that defendant raised triable issues of fact, including whether the City waived enforcement of the automatic title reverter provision (City of Peekskill v Schurr). Finally, a right of reverter may also be extinguished by merger when the grantor becomes the owner of both the right of reverter and the fee title to that parcel (see e.g. Matter of La Barbera v Town of Woodstock, 29 AD3d 1054, 1056 [2006], lv dismissed 7 NY3d 844 [2006], citing Jemzura v Jemzura, 36 NY2d 496, 502 [1975]; Schmaeling v Schmaeling, 127 Misc 2d 763, 767 [1985]).
In resolving the instant dispute, it must also be recognized that in discussing the effect of acquiring title in a foreclosure sale, the Court has stated:
“[T]he sale was made by the referee as an officer of the court. The court may direct its officer to act in accordance with fairness and equity. In effect the contract is made with the court, and a purchaser upon a judicial sale will not be compelled to perform his contract ‘where it would not be perfectly just and conscientious in an individual to insist upon the performance of the contract against the purchaser, if the sale had been made by such individual or his agent.’ (Veeder v. Fonda, 3 Paige Ch. 94.) Perhaps, in this case, an individual seller might conscientiously and fairly have insisted upon the performance of a contract, made under similar circumstances, for a purchaser deals at arm’s length with an individual seller and may not look to the seller for protection or relief against his own blunders. The rule that a buyer must protect himself against *274 undisclosed defects does not apply in all strictness to a purchaser at a judicial sale. He may feel some sense of security against hidden pitfalls, and be lulled into signing a contract with an officer of the court which he would not make with an individual without further investigation.” (Lane v Chantilly Corp., 251 NY 435, 437-438 [1929].)
Hence:
“It is well established that a foreclosure sale is subject to the court’s equitable power to set it aside ‘to relieve of oppressive or unfair conduct’ (Guardian Loan Co. v Early, 47 NY2d 515, 521; Fisher v Hersey, 78 NY 387; Crane v Stiger, 58 NY 625; King v Platt, 37 NY 155). That rule has been applied to permit a judicial disallowance of a sale ‘when fraud, collusion, mistake or misconduct casts suspicion on the fairness of the sale’ (Bankers Fed. Sav. & Loan Assn. v House, 182 AD2d 602, 603). A buyer at a foreclosure sale is not subject to the same ‘buyer beware’ principles that would govern a sale in a calmer setting (Lane v Chantilly Corp., 251 NY 435; Sohns v Beavis, 200 NY 268, 271-272).” (John Hancock Mut. Life Ins. Co. v 491-499 Seventh Ave. Assoc., 169 Misc 2d 493, 495 [1996]; see also Sohns, 200 NY at 271-272 [a sale of land in the haste and confusion of an auction room is not governed by the strict rules applicable to formal contracts made with deliberation after ample opportunity to investigate and inquire]; Morrow v Renniere Process, Inc., 222 App Div 100 [1927] [where property was purchased at a judicial sale, through an officer of the court, as distinguished from a private sale between vendor and purchaser, the court disposed of the matter solely upon equitable principles]).
As argued by plaintiff, however, other cases hold that “[i]t is firmly established that a purchaser at a foreclosure sale is not excused from completing performance on account of an apparent defect in title of which he or she had notice at the time the bid was made” (see e.g. Aaron v Kent, 182 AD2d 960, 961 [1992], citing Riggs v Pursell, 66 NY 193 [1876]). These cases implement the well established principles of contract interpretation, which provide that “[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties’ intent” (Civil Serv. Empls. Assn., Inc. v Plainedge Union Free School Dist., 12 AD3d 395, 396 [2004], *275 citing Slatt v Slatt, 64 NY2d 966, 967 [1985], rearg denied 65 NY2d 785 [1985]).
Discussion
As a threshold issue, the court rejects Brooklyn’s assertion that the City may already own the property at issue herein as the result of Mayfield’s default under the terms and conditions of her deed with the City. A review of the language contained in the deed compels the finding that the right of reverter was not automatic, since the language clearly provides that in the event of Mayfield’s default “the City shall have the right subject to the laws of the State of New York to re-enter and take possession of” Mayfield’s interest and “at its option may declare a termination and reversion of Grantee [’s] interest” (cf. City of Peekskill, 14 AD3d at 643-644). Hence, since the right of reverter is not self-executing, if the City had taken the action necessary to reacquire the property, the filing of a notice of pendency or a deed conveying title back to the City should have been discovered by First American and/or Ticor.[5]
Similarly, the court declines to set aside Brooklyn’s contractual obligation to purchase the subject property in the exercise of its equitable power to set aside a foreclosure sale. As the above discussion of the law makes clear, the exercise of such discretion is premised upon recognition of the principle that the same “buyer beware” principles that would govern a sale in a calmer setting are not present at a foreclosure sale (see generally Lane, 251 NY at 437-438; John Hancock Mut. Life Ins. Co., 169 Misc 2d at 495). In this case, however, Brooklyn did not purchase the property at foreclosure sale. Instead, it is the assignee of the successful bidder. Thus, Brooklyn must be presumed to have had adequate time to make the calculated business decision to execute the assignment, so that the rationale underlying the cases that Brooklyn relies upon to support its demand for an order setting aside the sale are inapplicable to the facts herein.
Brooklyn is, however, entitled to receive marketable title from plaintiff (see generally Regan, 40 NY2d at 481-482; Loba v Carey, *276 29 NY2d 302, 311 [1971]). This conclusion finds further support in paragraph 8 of the terms of sale, quoted above, which requires plaintiff to provide title insurance, at purchaser’s expense, if purchaser raises written objections of title. In this regard, plaintiff does not deny Brooklyn’s contention that neither its title company nor plaintiffs title company is willing to issue title insurance covering the City’s right of reverter. Although paragraph 8 appears to conflict with the more general provisions of paragraph 6, which requires the purchaser to take the premises “as is,” subject to “covenants, restrictions and easements,” the court finds the more specific provision of paragraph 8 to be controlling (see generally Matter of Town of Hempstead, 50 Misc 2d 101, 103-104 [1966], citing Papiernick v City of New York, 202 Misc 717 [1952]; East End Trust Co. v Otten, 255 NY 283 [1931]; People ex rel. Leet v Keller, 157 NY 90 [1898]; People ex rel. Savory, Inc. v Plunkett, 295 NY 180 [1946]; Robia Holding Corp. v Walker, 257 NY 431 [1931]; Strauch v Town of Oyster Bay, 263 App Div 833 [1941]). This conclusion is in conformity with the general principle of contract interpretation, which provides that “[w]here possible, a contract should be interpreted to avoid inconsistencies and to give meaning to all of its provisions, giving a practical and reasonable interpretation to the language employed and the parties’ reasonable expectations with respect thereto” (Malleolo v Malleolo, 287 AD2d 603, 603-604 [2001], citing W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). Hence, “a court should not adopt an interpretation which would leave any provision without force and effect” (Gonzalez v Norrito, 256 AD2d 440, 440 [1998], lv dismissed 93 NY2d 888 [1999], citing Penguin 3rd Ave. Food Corp. v Brook-Rock Assoc., 174 AD2d 714, 716 [1991]). Compelling Brooklyn to close on the subject property, while plaintiff is unable to procure title insurance, would leave paragraph 8 without effect.
In so holding, the court also notes that this case is distinguishable from Aaron v Kent (182 AD2d 960 [1992]), the case relied upon by plaintiff, since the purchaser therein had actual notice of the existence of the tax lien that he claimed rendered the title unmarketable at the time he made his bid at the foreclosure sale. In this case, there is no indication that plaintiff, ZZ Management or Brooklyn had any notice of the City’s right of reverter at the time of the sale. In fact, said right could only be discovered after a review of the deeds in the chain of title, which review could not reasonably be expected to be undertaken until a title search was ordered.
*277 The court further concludes that the City’s right of reverter renders title unmarketable (see e.g. Van Vliet & Place, 249 NY at 109; Bloom, 146 AD2d at 917; McAndrew, 280 App Div at 9). Hence, Brooklyn will not be compelled to accept title as encumbered by the City’s right of reverter. Nonetheless, Brooklyn is not entitled to a stay pending resolution of the exceptions in its title report, nor is it entitled to an order directing plaintiff to cure the exceptions. In this regard, Brooklyn is seeking, in effect, specific performance of its contract. Since Brooklyn’s contract is with the referee, and not with defendant, Brooklyn’s demand for specific performance must fail (see generally Jorgensen, 100 AD2d at 648). However, having determined that plaintiff is unable to convey marketable title and/or to obtain title insurance, plaintiff has breached its obligation under the terms of sale. Accordingly, Brooklyn is entitled to an order vacating the foreclosure sale in its entirety and directing the return of the deposit.
Conclusion
Brooklyn’s motion is granted only to the extent of vacating the foreclosure sale in its entirety and directing plaintiff to return the deposit to it.

. It is not clear if the assignment was approved by the referee.

. Paragraph 2 (2) of the terms of sale provides, in relevant part, that: “if purchaser fails to call at the time and place . . . specified to pay the balance of the purchase price and receive the deed, the Plaintiff will have the option, in its sole discretion and without leave of court ... to elect to reschedule the foreclosure sale and the ten percent (10%) deposit given by the purchaser to the Referee will be retained by the Referee and applied to the proceeds of the rescheduled foreclosure.”
Paragraph 4 of the terms of sale provides, in pertinent part, that:
“[I]n case any purchaser shall fail to comply with any of the above conditions of sale, the premises . . . struck down to him will be again put up for sale under the direction of the Referee . . . and such purchaser will be held liable for any difference there may be between the sum for which said premises shall be struck down upon the sale and the price for which the premises may be purchased on the resale, plus any costs or expense incurred for such resale and upon purchaser’s default, the bid shall automatically be forfeited and applied to the aforesaid deficiency, if any.”

. Paragraph 6 of the terms of sale provides, in relevant part, that: “The premises shall be sold in ‘as is’ physical conditions and subject to any state of facts an accurate survey would show, and to covenants, restrictions and easements, if any, of record affecting said premises and any violation of record thereof, and to zoning regulations and ordinances of the city, town or village in which said premises lies and any violations of record thereof, prior liens, if any.”

. Paragraph 8 of the terms of sale provides that:
“Title insurance, if any, shall be paid for [by] the purchaser. In the event Purchaser raises written objection to title, Plaintiff shall have the option of providing fee title insurance from a title insurance company of his choice, insuring insurable title. The premium for such fee title insurance shall be paid by the purchaser.”

. No explanation is offered from plaintiff, however, with regard to why the City chose to sell its tax lien to plaintiff instead of exercising its right of reverter. Moreover, although the City was served with a copy of the summons and complaint, and hence is subject to the jurisdiction of the court, Brooklyn did not serve the City with a copy of the instant order to show cause, so that no adjudication of the City’s right to exercise the right of reverter can be made in disposing of Brooklyn’s application.